629 A.2d 1027

**Virgil and Margaret JUNGE, Appellants,**

v.

**GARLOCK, INC., Pacor, Inc., Eagle–Picher Ind., GAF Corp., Keene Corp., Raymark Ind. Inc., Celotex Corp., Southern Textile Co., J.P. Stevens Co., Owens–Illinois Glass Co., Fibreboard Corp., and Forty–Eight Insulation, Inc.**

Superior Court of Pennsylvania.

Argued March 4, 1993.

Filed Aug. 19, 1993.

Suzanne Reilly, Philadelphia, for appellants.

Leslie A. Miller, Philadelphia, for appellees.

Before CAVANAUGH, BECK and HUDOCK, JJ.

BECK, Judge.

In this asbestos personal injury action, the trial court granted defendant Garlock, Inc.'s pre-trial motion to dismiss on the ground that plaintiffs Virgil and Margaret Junge failed to meet their prima facie burden of proving that Garlock's asbestos products caused Virgil Junge's asbestosis. We reverse.[1]

1. It is not clear what kind of motion actually was granted below. Garlock made its oral "Motion to Dismiss" prior to trial, on the ground that plaintiffs had failed to carry their prima facie burden to prove liability. During oral argument on the motion to dismiss, the Honorable Sandra Mazer Moss stated that the case was "beyond a summary judgment." Nor was this a true compulsory nonsuit, as the parties had not begun trial. It appears that Judge Mazer Moss was attempting to save the plaintiffs the expense of a trial where it seemed clear that a nonsuit ultimately would be entered. We note that the trial judge, in making her ruling, did consider the evidence proffered by defendant Garlock on the motion to dismiss, and this would be improper on a motion for nonsuit. Pa.R.Civ.P. 230.1. See Eisenhauer v. Clock Towers Ass., 399 Pa.Super. 238, 582 A.2d 33 (1990); Storm v. Golden, 371 Pa.Super. 368, 538 A.2d 61 (1988). Moreover, were this a true nonsuit, plaintiffs would be required to file a motion to remove the nonsuit prior to filing an appeal to this court. Pa.R.Civ.P. 227.1. See Panepinto v. Dummy's Delightful Saloonery, 304 Pa.Super. 256, 450 A.2d 668 (1982). For purposes of this appeal, we recognize that in any case where judgment is entered in favor of defendant as a matter of law, whether on demurrer, summary judgment, or nonsuit, we must review the record in the light most favorable to the plaintiff, drawing all reasonable inferences in his or her favor. See, e.g., Marks v. Tasman, 527 Pa.

Virgil Junge was employed as a boiler and machinery technician and repairman by the United States Navy and the Philadelphia Naval Shipyard over a period of thirty years. During that time, he personally handled Garlock asbestos sheet gaskets, flanges and packing. These materials would harden and become brittle with age, and Junge would have to dig, scratch, scrape, electric wire-brush and sand them in order to remove them from pipes, boilers and other machinery. Junge's work was conducted in the close confines of the ships' boiler rooms and machinery spaces, with his face an inch or two from the materials, and the process created dust that Junge breathed. These routines were executed daily, eight hours a day.

The parties agreed that William Fineman, M.D., plaintiff's pulmonologist expert, would testify in accordance with his report that Junge had asbestos related disease, and that each breath of dusty air that Junge drew substantially contributed to the causation of his disease.

Defendant Garlock concedes that its materials contain asbestos, and that asbestos fibers are released during their use. However, Garlock produced a report by Carl Mangold, an industrial hygienist, who opined that Garlock asbestos products are "encased" or "encapsulated," and as a result emit a low level of asbestos dust in use.[2] Through the additional testimony of a medical expert, defendant would argue that these low emissions could not have been a substantial factor in causing Junge's asbestosis.

During pre-trial proceedings, Garlock made an oral motion to dismiss; the trial judge heard testimony from plaintiff Junge and argument from counsel. Despite Junge's testimony, which positively identified Garlock's product and described Junge's proximate, frequent and regular exposure to dust

132, 589 A.2d 205 (1991) (summary judgment); *Firing v. Gephart,* 466 Pa. 560, 353 A.2d 833 (1976) (demurrer); *Baran v. Pagnotti Enterprises, Inc.,* 402 Pa.Super. 298, 586 A.2d 978 (1991) (nonsuit).

**2.** Mangold reported that Garlock's products emitted airborne asbestos fibers at a rate below the OSHA standard of 2 per cc. greater than 5 um. in diameter. *Junge v. Garlock,* 23 Phila. 560, 562 (1992).

emitting from it, Judge Mazer Moss held that because Junge had no industrial hygienist to combat Garlock's expert testimony, he could not prove that Garlock products were a substantial cause of his condition. The court dismissed the claims against Garlock because Junge "could not identify the asbestos fiber levels in [the] dust" he breathed. *Junge*, 23 Phila. at 564. This was error.

Our case law includes no requirement that a plaintiff in an asbestos case prove through an industrial hygienist, or any other kind of opinion witness, *how many asbestos fibers are contained in the dust emissions from a particular asbestos containing product.* Instead, in order to make out a prima facie case, it is well established that the plaintiff must present evidence that he inhaled asbestos fibers shed by the specific manufacturer's product. *Eckenrod v. GAF Corp.*, 375 Pa.Super. 187, 544 A.2d 50, 53 (1988), *alloc. den.*, 520 Pa. 605, 553 A.2d 968 (1988). A plaintiff must establish more than the presence of asbestos in the workplace; he must prove that he worked in the vicinity of the product's use. *Id.* *See also Gross v. Johns–Manville Corp.*, 410 Pa.Super. 486, 600 A.2d 558 (1991); *Godlewski v. Pars Mfg. Co.*, 408 Pa.Super. 425, 597 A.2d 106 (1991). A plaintiff may defeat a motion for summary judgment only when he meets these elements of regularity, frequency and proximity. *Eckenrod*, 375 Pa.Super. at 192–93, 544 A.2d at 53; *Samarin v. GAF Corp.*, 391 Pa.Super. 340, 571 A.2d 398, 404–05 (1989). In this case, Junge has met his prima facie burden of proof.

Junge positively identified the Garlock products with which he worked. He testified that he personally worked within an inch of the gaskets and packing on a regular, daily basis; this was not a case of "fiber-drift" throughout a large area. Junge testified that his work produced "all kinds of dust," such that he would have to "turn around, blow [his] nose and spit this stuff out." Garlock does not dispute that its gaskets and packing material contained and emitted asbestos. The evidence would have established that Junge inhaled asbestos

fibers shed by Garlock products, and under *Eckenrod, supra,* a prima facie case of liability was presented.[3]

Garlock argues, however, that Junge could never prevail because he did not produce evidence to show that his exposure to its *encapsulated* products was a substantial factor in causing his disease. We disagree. Garlock's products emit asbestos dust, and Dr. Fineman was prepared to testify that every breath of dust contributed to Junge's condition. This medical opinion, together with Junge's own testimony, created a question of fact;[4] the facts in this case do not "lead unerringly to but one conclusion." *Baran, supra* 402 Pa.Super. at 306, 586 A.2d at 982.

■ The trial court's holding that plaintiffs in asbestos actions must present an industrial hygienist who can measure the amount of asbestos fibers emitted by a specific asbestos containing product before they may reach the jury is erroneous.[5] No such requirement exists, and we decline to create it here.[6]

3. Obviously, the facts of this case are distinguishable from situations where the plaintiff has not sufficiently identified the particular product to which he or she was exposed, or proffered evidence that the product identified actually contained asbestos.

4. A further factual dispute is presented by the Junges' argument that Garlock's industrial hygienist tested only one of the Garlock products used by Junge—"gaskets" but not "packing". Garlock contends that "packing" and "gaskets" are two terms that refer to the same product.

5. Garlock improperly cites several unpublished memoranda in which the plaintiffs' claims were dismissed in the absence of an industrial hygienist's testimony regarding the amount of asbestos fibers emitted by a particular product. *Jones v. Garlock, Inc.,* Oct. Term 1980, No. 4671 (July 11, 1988), aff'd by Memorandum decision, Pa.Super. No. 3363 Phila. 1987 (filed Jan. 10, 1989); *Nogan v. GAF Corp.,* Civ. No. 88–0334, 1989 WL 161541 (M.D.Pa. May 24, 1989); *Stanukenas v. Carey Canada,* Civ. No. 90–1049 (M.D.Pa. June 14, 1991). Garlock also points to published opinions from various federal courts and other state courts which reach similar conclusions. We are not bound by these decisions.

6. Garlock's argument is a variation of the *"de minimis"* argument rejected by this court in *Lilley v. Johns–Manville Corp.,* 408 Pa.Super. 83, 596 A.2d 203 (1991), *alloc. den.* 530 Pa. 644, 607 A.2d 254 (1992). In *Lilley,* plaintiff established that he had breathed asbestos fibers shed by Fibreboard Corp.'s product, and his medical expert testified that even one day's worth of such inhalation constituted a "substantial

■ What does exist in this case is a prima facie showing of liability, and a credibility contest between the parties' experts. Credibility questions are for the jury. *Scott v. Purcell*, 490 Pa. 109, 415 A.2d 56 (1980); *Garcia v. Savage*, 402 Pa.Super. 324, 586 A.2d 1375 (1991). The Junges have met their prima facie burden of proof and are entitled to present their claims to a jury. *See Lilley, supra* 408 Pa.Super. at 103–05, 596 A.2d at 213. We reverse the judgment in favor of Garlock, and remand this case for trial.

Reversed and remanded for further proceedings consistent with this opinion. Jurisdiction relinquished.

---

contributing factor" of his asbestos related disease. *Id.* at 94, 596 A.2d at 208. This court held that Fibreboard was not entitled to an instruction specifically defining "substantial contributing factor" or a charge regarding the *de minimis* effect of certain products to which plaintiff had been "minimally exposed". A charge which explained the requirements of *Eckenrod* was sufficient to instruct the jury as to the plaintiff's burden of proof. *Id.* 40 Pa.Super. at 97–99, 596 A.2d at 210. Further, the court held that where plaintiff's medical expert opined that "every breath" contributed to his disease, the jury would not have to know *exactly how much asbestos from each defendant's product* he actually had inhaled to find liability. *Id.* Finally, Fibreboard argued that Lilley had produced insufficient evidence to support the inference that products manufactured by itself and Garlock (including asbestic gaskets) had contributed to his medical condition, and that a directed verdict against plaintiff was warranted. This court disagreed, and considered Lilley's evidence that he utilized Garlock gaskets, and breathed dust from other asbestos containing products, together with evidence of proximity, sufficient to go to the jury. *Id.* at 103–05, 596 A.2d at 213.