Flextallic Gasket Co., Anchor Packing Co., John Crane, Inc.

Appeal of: John Crane, Inc., Appellant.

Ralph Swan, Appellee,

v.

Rapid American Corp., AC & S Corp., Anchor Packing Co., AW Chesterton, Inc., John Crane, Inc., Garlock, Inc., Goulds Pumps, Inc., Minnesota Mining and Manufacturing Company, Owens Corning Fiberglas Corp., Owens Brockway Glass Container, Inc., Studebaker Worthington, Inc., Uniroyal, Inc., Westinghouse Electric Corporation, Inc., WR Grace & Co., Armstrong World Industries, Inc., Fibreboard Corp., GAF Corporation.

Charlotte ANDALORO, Appellee,

v.

ARMSTRONG WORLD INDUSTRIES, INC., AC & S Corp., Celotex Corporation, Eagle Picher Industries, Inc., Fiberboard Corp., Gas Corporation, Garlock, Inc., H.K. Porter Co., Inc., Keene Corporation, National Gypsum Co., Owens Corning Fiberglas Corp., Owens Brockway Glass Container, Inc., Pittsburgh Corning Corp., Raymark Industries, Inc., Southern Textile Co., Turner–Newall, Ltd., U.S. Gypsum Co.,

Appeal of: John Crane, Inc., Appellant.

Harold and Marion Ruby, Appellees,

v.

Armstrong World Industries, Inc., AP Green Refractories Co., Allied Signal, Inc., Anchor Packing Co., Celotex Corp., Combustion Engineering, Inc., John Crane, Inc., Eagle Picher Industries, Inc., Flextallic Gasket Co., GAF Corporation, Garlock, Inc., General Refractories Company, H.K. Porter Co., Inc., Keene Corporation, National

Gypsum Co., Owens Corning Fiberglas Corp., Owens Brockway Glass Container, Inc., Pittsburgh Corning Corp., Southern Textile Co., Turner-Newall, Ltd., U.S. Gypsum Co., Weil-McClain Co.

Appeal of: John Crane, Inc., Appellant.

James J. and Frances L. Greenhalgh, H/W, Appellees,

v.

National Gypsum Co., Hajoca Plumbing Co., H.B. Smith, Inc., Columbia Boiler Company of Pottstown Weil-McClain Co., Melrath Gasket Company, Inc., Melrath Gasket Holding Co., Inc., John Crane, Inc., Flextallic Gasket Co., Hopeman Brothers, Inc., McCardle Desco, Inc., Keeler/Door Oliver, Inc.

Appeal of: John Crane, Inc.

Edward C. and Doris Burkett, Appellees,

v.

Armstrong World Industries, Inc., AP Green Refactories Co., Brand Insulationas, Inc., Flintkote Co., Foster Wheeler Corp, Inc., Maremont Corp., Porter-Hayden Co., Westinghouse Electric Corp., AC & S Corp., Celotex Corp., Eagle Picher Industries, Inc., Fiberboard Corp., Flextallic Gasket Co., GAF Corporation, Garlock, Inc., HK Porter Co., Inc., Keene Corporation, National Gypsum Co., Owens Corning Fiberglas Corp., Owens Brockway Glass Container, Inc., Pittsburgh-Corning Corp., Raymark Industries, Inc., Southern Textile Co., Turner-Newall, Ltd., U.S. Gypsum Co.,

Certain-Teed Corp. Inc., Melrath Gasket, Inc., Anchor Packing Co.

Appeal of: John Crane, Inc., Appellant.

Charlotte Andaloro, Executrix of the Estate of Franklin Andaloro, Appellant,

v.

Armstrong World Industries, Inc., AC & S Corp, Anchor Packing Co., Inc., John Crane, Inc., et al.

Appeal of: Charlotte Andaloro, Executrix of the Estate of Franklin Andaloro.

James J. and Frances L. Greenhalgh, H/W, Appellants,

v.

Raymark Industries, Inc., HK Porter Co., Inc., Eagle Picher Industries, Inc., Owens Corning Fiberglas Corp., John Crane, Inc., Appellee, et al.

Appeal of: James J. and Frances L. Greenhalgh, H/W.

Edward C. and Doris Burkett, H/W, Appellants,

v.

Armstrong World Industries, Inc., Anchor Packing Co., Inc., AP Green Refactories Co., John Crane, Inc., Appellee, et al.

Appeal of: Edward C. and Doris Burkett, H/W.

Ralph Swan and Elizabeth Swan, H/W, Appellants,

v.

Rapid American Corporation, AC & S, Inc., Anchor Packing Co., Inc., A.W. Chesterton, Inc., John Crane, Inc., Appellee, et al.

Appeal of: Ralph Swan and Elizabeth Swan, H/W.

Harold and Marion Ruby,
H/W, Appellants,

v.

Armstrong World Industries, Inc., Allied Signal, Inc., Anchor Packing Co., Inc., AP Green Refractories Co., John Crane, Inc., Appellee, et al.

Appeal of: Harold and Marion Ruby, H/W.

Superior Court of Pennsylvania.

Filed April 17, 2002.
Argued October 23, 2001.
Reargument Denied June 19, 2002.

David F. Abernethly, Philadelphia, for John Crane, Inc.

Steve J. Cooperstein, Philadelphia, for Andaloro, Swan, Ruby, Greenhalgh and Burkett.

Before MCEWEN, P.J.E., JOHNSON, and KELLY, JJ.

JOHNSON, J.

¶ 1 This matter is before the Court on cross-appeals from judgments entered for the plaintiffs in five asbestos cases consolidated for trial. The respective plaintiffs, Charlotte Andaloro, James J. and Francis L. Greenhalgh, Edward C. and Doris Burkett, Ralph and Elizabeth Swan, and Harold and Marion Ruby (collectively "Plaintiffs"), assert that the trial court erred in molding the verdict to reflect the appropriate *pro rata* distribution of liability between the numerous defendants. Defendant and cross-appellant John Crane, Inc. contends that the court erred in refusing to enter judgment notwithstanding the verdict on the basis that Plaintiffs failed to establish exposure to John Crane products and failed to present adequate expert testimony on causation. In the alternative, Crane demands remittitur and raises putative procedural errors, impugning the consolidation of the cases as well as the court's charge during the liability phase of the trial. For the following reasons, we affirm in part and vacate in part.

¶ 2 Plaintiffs commenced the underlying actions against the named defendants following medical diagnoses of mesothelioma or asbestosis in each of the plaintiff husbands. Additionally, Plaintiffs filed claims with the Manville Personal Injury Settlement Trust for compensation from Trust assets pursuant to the Trust Distribution Process. *See In re Joint Eastern and Southern Districts Asbestos Litigation,* 878 F.Supp. 473 (E.D.N.Y.1995). Prior to trial, one defendant filed for bankruptcy protection and the court dismissed several

others from the actions in which they were named. At the commencement of trial, Plaintiffs' claims against the Trust remained open. The Trust had not reached a settlement with any of the plaintiffs.

¶ 3 These matters proceeded to trial in two phases before the Court of Common Pleas of Philadelphia County. The court conducted reverse-bifurcated trials, a jury in the first phase determining damages (Phase I) and a new jury in the second phase considering the issue of liability (Phase II). In Phase I of the trial, the jury assessed damages as follows: to Andaloro, $1,000,000; to Greenhalgh, $800,000; to Swan, $750,000; to Ruby, $200,000; and to Burkett, $50,000. The jury also awarded damages for loss of consortium to Mrs. Andaloro for $30,000.

¶ 4 Following assessment of damages in the respective cases, the trial court consolidated the matters for the remaining phase of trial pursuant to Pa.R.C.P. 213(a). In Phase II, a second jury identified John Crane products, as well as those of various other defendants, as the specific cause of Plaintiffs' injuries. The court molded the Andaloro, Greenhalgh, Swan, and Ruby verdicts to reflect the dismissal or absence from the record of various other defendants. The court then divided the verdict equally among the defendants remaining and apportioned a full share of the verdict to the Manville Trust. Because the claims against the Manville Trust had not been settled, there was no settlement release to control the manner in which the resulting setoff or reduction in the verdict would be calculated to account for the Trust's contribution. Although Plaintiffs sought to have the contribution set off *pro tanto,* to reflect the actual amount the Trust would pay, the court applied a *pro rata* set-off, effectively reducing the amount of the verdict by one full share without regard to the actual amount of the Trust's contribution.

As the Trust's actual contribution is generally nominal relative to the amount of the award of damages, the award of a *pro rata* set-off effectively reduced the amounts of the respective Plaintiffs' recoveries.

¶ 5 Following trial, John Crane filed a Motion for Post–Trial Relief incorporating requests for judgment notwithstanding the verdict (judgment n.o.v.), or in the alternative, a new trial. John Crane posed the additional alternative of remittitur in the Greenhalgh and Swan cases. Plaintiffs too sought post-trial relief, contending that the court erred in determining the number of shares to be apportioned in the Greenhalgh and Swan cases, and applying the set-off for the Manville Trust's share *pro rata,* rather than *pro tanto.* The court denied both motions and added damages for delay pursuant to Pa.R.C.P. 238. Plaintiffs and John Crane filed their respective appeals. As both cross-appellants pose multiple questions, we shall dispose of Plaintiffs' appeal in its entirety before proceeding to John Crane's cross-appeal.

¶ 6 Plaintiffs raise the following questions for our review:

1. Did the [trial] court err in molding the *Greenhalgh* verdict by assigning verdict shares to the defendants with whom the plaintiffs had not settled and who were either dismissed pretrial or not represented at trial, and by determining that Defendant John Crane, Inc., was entitled to a pro rata setoff for a share of the verdict assigned to the Manville Personal Injury Settlement Trust?

2. Did the [trial] court err in the *Andaloro* case by determining that defendant John Crane, Inc., was entitled to a *pro rata* setoff for a share of the verdict assigned to the Manville Personal Injury Settlement Trust?

3. Did the [trial] court err in molding the *Swan* verdict by assigning ver-

dict shares to defendants with whom the plaintiffs had not settled and who were dismissed pretrial, and by determining that defendant John Crane, Inc., was entitled to a *pro rata* setoff for a share of the verdict assigned to the Manville Personal Injury Settlement Trust?

4. Did the [trial] court err in the *Ruby* case by determining that defendant John Crane, Inc., was entitled to a *pro rata* setoff for a share of the verdict assigned to the Manville Personal Injury Settlement Trust?

Consolidated Brief of Appellees and Cross–Appellants (Brief for Appellants) at 7. Before proceeding, we note that all of Plaintiffs' questions on appeal impugn the trial court's apportionment of a *pro rata* verdict share to the Manville Trust, thus allowing a *pro rata* setoff to the other defendants. This legal issue is dispositive of Plaintiffs' appeal; accordingly we shall address it generally as to all questions before considering any remaining issues.

▇▇▇▇ ¶ 7 Apportionment of liability between joint tortfeasors poses a question of law. *See Baker v. AC & S,* 562 Pa. 290, 755 A.2d 664, 667 (2000) (hereafter *"Baker II"*). Accordingly, our scope of review of questions of apportionment is plenary, prescribing that we consider the issue *de novo. See id.* Our standard of review provides that we may reverse the trial court's decision upon a showing of abuse of discretion or error of law. *See id.,* n. 4.

▇▇▇▇ ¶ 8 As a general matter, the law of Pennsylvania provides that joint tortfeasors are jointly and severally liable to the plaintiff to pay awards of damages arising out of the injury to which their activity contributed. *See Baker II* at 668. Our Supreme Court has determined, however, that when a plaintiff settles his or her claim with the Manville Trust, the terms of the settlement release govern the allocation of liability between the remaining defendants. *See id.* at 667. Accordingly, the release also determines the amount of the set-off against liability to which the remaining defendants are entitled due to the Trust's participation. *See id.* at 669. If a plaintiff's agreement with the Trust provides that the setoff shall be *pro rata,* then a full equal share is deducted from the amount of the verdict for which the remaining defendants may be held accountable. *See Baker II,* 755 A.2d at 668; *Baker v. AC&S, Inc.,* 729 A.2d 1140, 1147 (Pa.Super.1999) (hereafter *"Baker I"*). One full share of equal value shall be assessed against each party, including the Trust, and the full value of the Trust's share shall be deducted from the verdict. *See id.* Even if, as is customary, the amount paid by the Trust is markedly less than the value of a full *pro rata* share, the remaining defendants are entitled to offset the value of a full share against the verdict amount. The defendants are thus accorded a reduction in their respective contributions based on the share attributed to the Trust regardless of whether the Trust paid the value of a full share in settlement. The plaintiff may not recover the shortfall in the Trust's payoff from the remaining defendants.

▇▇▇▇ ¶ 9 If, however, the release is designated *pro tanto,* any subsequent verdict shall be reduced only by the *actual amount paid* by the Trust and the remaining amount of the verdict divided equally between the defendants held liable. *See Baker I,* 729 A.2d at 1147–48. Apportionment of the verdict, *pro tanto,* thus enables the plaintiff to collect the entire amount of the verdict, notwithstanding the lesser value of the Trust's contribution, as the amount exceeding that contribution is apportioned equally between the remaining defendants. In this manner, a settling plaintiff is assured recovery of the full

amount of the verdict regardless of the lesser amount paid by the Trust. The remaining defendants are then subject to a greater proportionate share of liability, which they may not recover from the Trust. *See Baker I,* 729 A.2d at 1151.

¶ 10 In this matter, the trial court recognized the respective mandates of *Baker I* and *Baker II* in cases where the plaintiff had entered a settlement agreement with the Manville Trust prior to the entry of a verdict. Trial Court Opinion, 7/17/00, at 7. The court concluded, however, that where as here, Plaintiffs' claims against the Manville Trust remain unresolved, apportionment of the verdict is "problematic," as "there is no telling as to whether the release and settlement [with the Manville Trust] will be *pro rata* or *pro tanto.*" Consequently, the court determined to apportion the verdict against the defendants *pro rata,* concluding: "in view of the speculative nature of any future releases, this [c]ourt will adopt common practice and assign a full share to Johns–Manville." Trial Court Opinion at 8. The court concluded further: "There is no authority which precludes such disposition when there is no release." Trial Court Opinion at 8.

¶ 11 Plaintiffs assert that the court's determination constituted an error of law, as liability between defendants to asbestos claims involving the Manville Trust is properly apportioned *pro tanto* pursuant to the Trust Distribution Process (TDP) and the Uniform Contribution Among Tortfeasors Act (UCATA), 42 Pa. C.S. § 8326. Brief for Appellants at 20. We agree. Contrary to the trial court's conclusion, the TDP provides a specific formula to determine the amount of a set-off attributable to the participation of the Manville Trust in the absence of a settlement agreement. Accordingly, we recognized in *Baker I,* that "if the [plaintiff]

obtains a verdict against the co-defendant, the co-defendant can obtain a 'set-off' or reduction in verdict in respect to the Trust *whether or not the [plaintiff's] direct claim against the Trust has been resolved."* 729 A.2d at 1146 (citing TDP § H.1(c), H.2.) (emphasis added). *See also In re Joint Eastern and Southern Districts Asbestos Litigation,* 878 F.Supp. 473, 591 (E.D.N.Y. 1995) (directing that "set-off credit shall be the preferred method of satisfying Co–Defendant claims, *regardless of whether the Trust and claimant [i.e. plaintiff] have liquidated the underlying claim"*) (emphasis added).

¶ 12 Calculation of the appropriate set-off amount is prescribed by the Trust Distribution Process as follows:

*3. Calculation of set-off.* The manner of calculating set-off shall be based on whether the claim has been liquidated by the Trust and the applicable law of contribution and verdict reduction or settlement credit.

*(a) Calculation of Trust's payment.* In situations where the amount of the Trust's payment or expected payment to a claimant is relevant to the set-off calculation, that amount shall be determined as follows:

\* \* \* \*

*(ii) Unliquidated claims.* Where the claim. has not been liquidated, the amount of the Trust's payment to the claimant (the "Unliquidated Trust Payment") shall be the amount of the Scheduled Value, as further described in this TDP, for the applicable disease category, multiplied by the *pro rata* share in effect at the time the set-off is being applied (as described above in Section G).

TDP § H.3.(a)(ii), 878 F.Supp. at 591–92. Thus, contrary to the trial court's conclu-

sion that the "speculative nature of any future releases" precluded determination of a set-off value, TDP section 3(a)(ii) provides a specific formula for the necessary calculation.

¶ 13 Upon review of the Schedule of Asbestos–Related Disease Categories and Values established by TDP section H.3.(a)(ii), *see* TDP § D, we note the following scheduled values:

| Category | Scheduled Disease | Value |
|:---:|:---:|:---:|
| I | Bilateral Pleural Disease | $ 12,000 |
| II | Nondisabling Bilateral Interstitial Lung Disease | $ 25,000 |
| III | Disabling Bilateral Interstitial Lung Disease | $ 50,000 |
| IV | Other Cancer | $ 40,000 |
| V | Lung Cancers (One) | $ 60,000 |
| VI | Lung Cancers (Two) | $ 90,000 |
| VII | Malignant Mesothelioma | $200,000 |

TDP § D, 878 F.Supp. at 585. The multiplier mandated by section H.3.(a)(ii), and specified by section G.1.(b), is 10%. *See* TDP § G.1.(b), 878 F.Supp. at 588 ("The initial *pro rata* share has been set at ten percent (10%) by the Trust with the concurrence of the SCB and the Legal Representative, after consultation with the Special Advisor."). Accordingly the set-off value of any claim not settled by the Manville Trust prior to entry of the verdict is ten percent of the scheduled value for the disease with which an individual claimant/plaintiff is afflicted. For Franklin Andaloro, who, prior to his death, was afflicted with Malignant Mesothelioma, the set-off value is thus ascertainable as $20,000 ($200,000 × 10%). For the remaining Plaintiffs, suffering from Disabling Bilateral Interstitial Lung Disease (Asbestosis), the set-off value is fixed at $5,000 ($50,000 × 10%).

¶ 14 Further consideration of the TDP and applicable Pennsylvania law establishes that the foregoing set-off amounts are properly applied to the verdict *pro tanto* when factoring the contribution amounts due from the defendants found liable at trial. For purposes of evaluating contribution calculations among joint tort-feasors, the TDP creates categories into which the respective states are divided based upon the law applied in those states to determine contribution. *See Baker I,* 729 A.2d at 1145 (citing TDP § H.3.(b), (c), (d), (e), (f)). "The TDP does not expressly categorize Pennsylvania or any other state," but instead provides that the law of the state shall determine the category into which it falls. *Id.* In *Baker I,* we determined that Pennsylvania is neither a pure *pro rata* nor *pro tanto* state, but instead falls into the category prescribed by TDP section H.3.(f), "States with multiple set-off rules." *See id.* Section H.3.(f) provides that:

> In some states, different set-off rules (*pro tanto, pro rata* or apportionment) govern different causes of action or parts thereof or different elements of damages. *In such states the applicable law shall govern which set-off rules apply to each cause of action or part thereof and each element of damages.*

TDP § H.3.(f) (emphasis added).

¶ 15 Plaintiffs advocate that to the extent the TDP "deems" a settlement with the Trust for the purpose of set-off calculation, the Court should properly apply pro-

visions of the "Uniform Contribution Among Tort-feasors Act" that prescribe the effect of a settlement release of one tortfeasor on the liability of joint tortfeasors. Brief for Appellant at 20–21. Where the parties to such a release have not specified the effect of the release on contribution and set-off, this section establishes a *pro tanto* default. The specific language of this provision is as follows:

### § 8326. Effect of release as to other tort-feasors

A release by the injured person of one joint tort-feasor, whether before or after judgment, *does not discharge the other tort-feasors unless the release so provides, but reduces the claim against the other tort-feasors in the amount of the consideration paid for the release* or in any amount or proportion by which the release provides that the total claim shall be reduced if greater than the consideration paid.

42 Pa.C.S. § 8326 (emphasis added).

¶ 16 Plaintiffs urge that because any "deemed" release under the TDP is necessarily silent concerning the manner in which the Trust's unliquidated payment is to be set off against the verdict, the foregoing provision requires that it be applied *pro tanto*. Brief for Appellant at 21. We conclude that such treatment is consistent both with the law of joint and several liability as recognized in Pennsylvania and with our Supreme Court's enunciated policy to favor complete compensation of injured parties.

¶ 17 "In strict liability actions, liability is ... apportioned equally among joint tortfeasors." *Baker II*, 755 A.2d at 669. "Yet, the declaration that liability is to be apportioned equally ... is not synonymous with the proposition that a tortfeasor may be compelled to pay only its share of the judgment and no more." *Id.*

In Pennsylvania, joint tortfeasors, including those in strict liability actions, are jointly and severally liable. Thus, the plaintiff may recover the entire damages award *from only one of the joint tortfeasors*. That tortfeasor's recourse for paying more than its proportionate share of the verdict is to sue the nonpaying joint tortfeasors in contribution.

*Id.* (emphasis added). Accordingly, a tortfeasor's right to contribution from other tortfeasors does not affect, in any way, the right of the plaintiff to recover the entire award of damages. Such an arrangement reflects Pennsylvania's commitment, often reaffirmed in the decisions of our appellate courts that "the plaintiff should be fully compensated for his injuries." *Baker I*, 729 A.2d at 1151. In this manner, the plaintiff is assured a complete recovery in accordance with the finding of the jury, while the burden of enforcing individual contributions falls on the defendant that satisfied the verdict.

¶ 18 We recognize that contribution for the benefit of other joint tortfeasors is not available against the Manville Trust under the terms of the TDP. *See id.* at 1152. Thus, treatment of the Manville Trust Unliquidated Payment as a *pro tanto* rather than *pro rata* setoff against the verdict, will impose a greater monetary obligation upon John Crane, Inc. and any other remaining defendants. Nonetheless, the consideration of whether a defendant is in fact able to collect the requisite contribution from the Trust or any joint tortfeasor is secondary to Pennsylvania's "longstanding legislative intent and judicial affirmation that ... as between the rights of victims and competing tortfeasors, the rights of victims shall be paramount." *Baker I*, 729 A.2d at 1151. This consideration is reinforced in actions based on strict liability, which arise from the premise that "as between an innocent consumer and a manufacturer of a defective product,

the manufacturer should bear the loss." *Id.* at 1152 n. 34.

¶ 19 Were we to affirm the trial court's *pro rata* set-off of the Manville Trust's liability, we would effectively deprive the injured Plaintiffs of their right to compensation in the interest of enforcing the rights of defendant tortfeasors to limit their liability to a stated share of the verdict. The plaintiffs would collect markedly less compensation while the defendants would experience a windfall in the form of a reduction in liability. Such a result is openly hostile to the stated objectives of joint and several liability as a system of compensation. *See Baker II,* 755 A.2d at 669. *Cf. Baker I,* 729 A.2d at 1151 ("A non-settling joint tortfeasor should not receive a release of its joint and several liability to the plaintiff simply because another joint tortfeasor settled for less than his or her allocated share of liability."). We conclude accordingly that where the Manville Trust has not settled a plaintiff's claim prior to entry of a verdict against other joint tortfeasors, the value of the set-off available to the joint tortfeasors based on the Trust's unliquidated contribution, shall be calculated under the foregoing provisions of the TDP and applied to the verdict *pro tanto.* As the trial court in this matter declined to calculate the value of the Trust's unliquidated contribution and applied a *pro rata* set-off, we conclude that the court erred. Accordingly, we vacate the judgment and remand the matter for redetermination of the appropriate set-off.

¶ 20 Additionally, Plaintiffs Greenhalgh and Swan assert that the trial court erred in assigning *pro rata* verdict shares to defendants with whom Plaintiffs had not settled and who were either dismissed pretrial or not represented at trial. Brief for Appellants at 16, 24–25. Initially, we find no discernible prejudice to Plaintiffs regardless of the number of *pro rata* shares the trial court assigned for purposes of contribution among the defendants. As we have recognized in the preceding discussion, every defendant found liable is liable jointly and severally to any of the plaintiffs in whose actions it was named. *See Baker II,* 562 Pa. 290, 755 A.2d 664 (reaffirming that "the plaintiff may recover the entire damages award from only one of the joint tortfeasors"). Moreover, Plaintiffs acknowledge this proposition in their brief. Brief for Appellants at 18. Nonetheless, we shall address Plaintiffs' allegations of error to promote judicial economy on remand.

¶ 21 In Greenhalgh, the jury found fourteen defendants liable and the court apportioned *pro rata* shares between twelve defendants after deducting two companies, one of which Greenhalgh had not sued, and one that had been dismissed prior to the completion of trial. Greenhalgh argues that the court should have excluded another three companies, Hajoca Plumbing Co., McCardle–Desco, Inc., and Keeler/Dorr Oliver, Inc., from allocation of *pro rata* shares. Greenhalgh argues that following the addition of these parties to the record, Plaintiffs determined not to pursue them and did not receive settlements from them. Nonetheless, the court allocated to them *pro rata* shares of the verdict. Upon review of the record, we note that Plaintiffs never released these defendants from the action notwithstanding any intentions they may have had. Consequently, these parties remained on the record when the verdict was rendered. Plaintiffs provide no authority to establish that the court's allocation of verdict shares is error under these circumstances. We conclude accordingly that Plaintiffs have failed to demonstrate error in this regard. *See* Pa.R.A.P. 2119(a) (requiring that appellant provide pertinent authority to dem-

onstrate entitlement to relief sought); *See Miller v. Miller*, 744 A.2d 778, 788 (Pa.Super.1999) (establishing that appellant bears the burden of persuasion to demonstrate his entitlement to the relief he requests).

¶ 22 In Swan, the jury found seventeen defendants liable, including John Crane. The court apportioned the verdict between fourteen defendants, reflecting the dismissal of four defendants prior to trial and the addition of one full *pro rata* share for the Manville Trust. Swan asserts that the court should have reduced the number of shares by one more to account for a total of five defendants the court acknowledged on the record had been either dismissed or never properly sued. Brief for Appellant at 25. The court, in its Pa.R.A.P.1925(a) opinion, acknowledges this point. Trial Court Opinion at 13–14. Accordingly, we need not address the matter further subject to the trial court's correction of the verdict slip as necessary upon remand.

¶ 23 We shall now proceed to the assertions raised by defendant John Crane, Inc. in its cross-appeal. John Crane states the following questions for our review:

I. Whether the defendant is entitled to judgment notwithstanding the verdict where the Plaintiff failed to offer any admissible evidence that the defendant's product was defective or that any alleged defect proximately caused his injuries[?]

II. Whether the defendant is entitled to new trials where reversible error was committed during both phases of the trials, including highly prejudicial remarks to the jury concerning the plaintiffs' alleged pain and suffering; an erroneous refusal to sever highly dissimilar cases and the delivery of a jury charge that was legally erroneous, and that effectively excused the plaintiffs from meeting their burden of proof[?]

III. Whether the defendant is entitled to a remittitur of the Greenhalgh and Swan verdicts where those verdicts were excessive in light of the plaintiffs' injuries[?]

IV. Whether the verdicts should be molded to reflect a *pro rata* set-off based on a share of liability attributable to the Manville Trust[?]

Brief for Appellee at 2. We find no necessity to address Cranes fourth question, as appropriate set-off for the share of liability attributable to the Manville Trust is thoroughly discussed in our disposition of Plaintiffs' appeal. Accordingly, we shall confine our discussion to the issues raised in Crane's questions I, II, and III.

¶ 24 Before proceeding, we note that although Crane designated only four questions in its statement of the questions involved, each question incorporates multiple issues and sub-issues, many of which would be more properly raised and discussed as separate questions. Had Crane presented its questions in this fashion, the indiscriminate nature of its assignments of error would be more readily apparent. Under such circumstances we are reminded of the well-chosen words of the Honorable Ruggiero Aldisert of the United States Court of Appeals for the Third Circuit:

With a decade and a half of federal appellate court experience behind me, I can say that even when we reverse a trial court it is rare that a brief successfully demonstrates that the trial court committed more than one or two reversible errors. I have said in open court that when I read an appellant's brief that contains ten or twelve points, a presumption arises that there is no merit to any of them. I do not say that this is an irrebuttable presumption, but it is a presumption nevertheless that reduces the effectiveness of appellate advocacy.

Appellate advocacy is measured by effectiveness, not loquaciousness.

*Estate of Lakatosh,* 441 Pa.Super. 133, 656 A.2d 1378, 1380 n. 1 (1995) (quoting Aldisert, The Appellate Bar: Professional Competence and Professional Responsibility—A View From the Jaundiced Eye of One Appellate Judge, 11 Cap.U.L.Rev. 445, 458 (1982)).

¶ 25 In its first question on appeal, Crane asserts that the trial court erred in refusing to grant judgment n.o.v., on the premise that Plaintiffs "failed to offer any admissible evidence that the defendant's product was defective or that any alleged defect proximately caused his injuries." Brief for Cross–Appellant at 2.

¶ 26 Crane posits that the testimony adduced from Plaintiffs' expert witnesses was not admissible, as it exceeded the fair scope of their respective reports. Brief for Cross–Appellant at 12–13. Crane argues also: 1) that the experts' testimony did not have an adequate basis in fact, Brief for Cross–Appellant at 16; 2) that the substance of their testimony did not enjoy general acceptance in the scientific community so as to satisfy the standard for admissibility in *Frye v. United States,* Brief for Cross–Appellant at 20; and 3) in the Andaloro case, was based on facts not in evidence, Brief for Cross–Appellant at 23.

■ ¶ 27 We conclude initially, that Crane has failed to preserve for appellate review its claim that the causation theories advanced by Plaintiffs' experts were not generally accepted in the scientific community. Brief for Cross–Appellants at 20. "In order to preserve an issue for appellate review following a civil verdict, the issue must first be raised in a post-trial motion." *Kraus v. Taylor,* 710 A.2d 1142, 1146 (Pa.Super.1998). Upon review of the post-trial motion Crane filed following entry of the verdict after the Phase II trial,

we find no assertion impugning general acceptance of the theories or methodology espoused by Plaintiffs' experts. Accordingly, we decline further consideration of this issue. *See id.;* Pa.R.A.P. 302(a) (Requisites for Reviewable Issue), 2101 (Conformance with Requirements).

¶ 28 Crane's remaining claims of error in the admission of expert testimony are meritless. In its first such claim, Crane contends that the respective experts' testimony exceeded the fair scope of their pretrial reports. Crane's argument appears to be based on the witnesses' testimony that every exposure to asbestos was a substantial contributing factor to Plaintiffs' development of disease. Brief for Cross–Appellant at 14, 15, 16. Crane argues that this testimony exceeds the scope of the respective expert reports because the experts had not opined in writing what specific level or frequency of exposure would foster disease. We find no merit in this claim.

■ ¶ 29 "[I]n determining whether an expert's trial testimony falls within the fair scope of his pre-trial report, the trial court must determine whether the report provides sufficient notice of the expert's theory to enable the opposing party to prepare a rebuttal witness." *Tiburzio–Kelly v. Montgomery,* 452 Pa.Super. 158, 681 A.2d 757, 765 (1996) (citations omitted). The "fair scope rule" is not, however, a trap for the unwary, requiring that every word a witness utters on the stand be traceable to his or her pre-trial report.

[I]n deciding whether an expert's trial testimony is within the fair scope of his report, the accent is on the word "fair." *The question to be answered is whether, under the particular facts and circumstances of the case, the discrepancy between the expert's pre-trial report and his trial testimony is of a nature which*

*would prevent the adversary from making a meaningful response, or which would mislead the adversary as to the nature of the appropriate response.*

*Feden v. Consolidated Rail Corp.,* 746 A.2d 1158, 1162 (Pa.Super.2000) (original emphasis) (quoting *Chanthavong v. Tran,* 452 Pa.Super. 378, 682 A.2d 334, 340 (1996)).

¶ 30 In this case, Plaintiffs' experts opined in their reports that Plaintiffs suffered exposure to asbestos dust and that their exposure was a substantial contributing factor in the development of their respective pleural diseases. *See* Reproduced Record (R.R.) at 619a (Ruby); 626a (Andaloro); 629a (Swan); 3223a–3225a (Greenhalgh); 3230a–3232a (Burkett). Ruby's expert, Stanley L. Altshuler, M.D., provided a detailed record of Ruby's work history and expressed the following theory of causation:

> Mr. Ruby is a seventy-three year old gentlemen with asbestosis and asbestos-related pleural disease. Asbestos dust inhalation in the workplace has caused his abnormal x-ray findings. Asbestos dust inhalation has contributed to his shortness of breath and reduction in diffusion capacity.

R.R. at 619a. Swan's expert also provided detailed context for his opinion, recording the patient's symptoms and exposure history followed by a conclusion on causation:

> It is my professional opinion that the asbestos exposure which Mr. Swan sustained during the course of his employment is a substantial contributing factor to his development of asbestos-related pleural disease and pulmonary asbestosis. The shortness of breath which Mr. Swan suffers is substantially caused by his exposure to asbestos.

R.R. at 629a. Other reports stated similar conclusions on behalf of Andaloro, Greenhalgh and Burkett. Although the reports

did not impose any specific limit on the quantity or frequency of exposure necessary to develop disease, they made Plaintiffs' theory of causation amply clear. Moreover, the experts' trial testimony was not inconsistent with the reports. We conclude accordingly that the discrepancy between the experts' pre-trial reports and their trial testimony is not "of a nature which would prevent the adversary from making a meaningful response." *Feden,* 746 A.2d at 1162. Rather, given the reports' full context, including Plaintiffs' exposure histories and specific statement of causation, we find ample information upon which Crane could rebut Plaintiffs' assertions of causation. *See Tiburzio–Kelly,* 681 A.2d at 765. We conclude accordingly that the experts' testimony was not outside the "fair scope" of their respective reports and the trial court did not err in admitting it.

¶ 31 Crane also contends that the testimony of Plaintiffs' respective experts was conjectural and therefore incompetent and inadmissible. Brief for Appellee at 16 (citing *Hussey v. May Department Stores, Inc.,* 238 Pa.Super. 431, 357 A.2d 635, 637 (1976)). Crane argues that the court should not have allowed the three witnesses to testify on liability and causation because they were not familiar with the specific physical properties of John Crane asbestos. Brief for Appellant at 16. Consequently, they could not state the specific lengths of asbestos fibers contained in John Crane products, the levels of respirable asbestos released from John Crane products, or the concentration of fibers from John Crane products in the air Plaintiffs inhaled. *Id.* at 17–19, 357 A.2d 635. Because the experts could not quantify these specific values, Crane concludes that their opinions had no basis in fact.

¶ 32 We conclude that Crane's argument has no basis in law. Crane's

assertion derives from the premise that quantification of the levels of asbestos exposure a plaintiff suffered is a prerequisite to a determination of causation and hence, liability. Crane provides no authority for such a premise, nor are we aware of any. In point of fact, Pennsylvania law provides that causation of asbestos-related injuries is shown upon proof that the plaintiff inhaled *some* fibers from the products of the defendant manufacturer. *See Lilley v. Johns–Manville Corp.*, 408 Pa.Super. 83, 596 A.2d 203, 207 (1991); *Samarin v. GAF Corp.*, 391 Pa.Super. 340, 571 A.2d 398, 405 (1989). "Our case law includes no requirement that a plaintiff in an asbestos case prove through [expert testimony] *how many asbestos fibers are contained in the dust emissions from a particular asbestos containing product.*" *Junge v. Garlock*, 427 Pa.Super. 592, 629 A.2d 1027, 1029 (1993). Similarly, the plaintiff need not demonstrate the specific lengths of fibers contained in a manufacturer's product, the length of fibers he inhaled, or the *overall* concentration of fibers in the air. *Cf. Junge*, 629 A.2d at 1029. Because these elements are not legally necessary to a determination of causation, an expert's inability to testify about them does not render his testimony incompetent on the issues of causation and liability. Accordingly, the trial court did not err in allowing the jury to consider the testimony of Plaintiffs' three expert witnesses.

¶ 33 Also in support of its first question on appeal, Crane argues that the evidence adduced in the Andaloro case to establish product identity and exposure was legally insufficient to establish a basis for relief under our holding in *Eckenrod v. GAF Corp.*, 375 Pa.Super. 187, 544 A.2d 50, 52 (1988). Brief for Appellee at 8–12. On this basis Crane seeks entry of judgment n.o.v. "Entry of judgment n.o.v. on the basis of evidentiary insufficiency is ap-propriate only in a clear case, where the facts are such that no two reasonable minds could fail to agree that the verdict was improper." *Coward v. Owens–Corning*, 729 A.2d 614, 622 (Pa.Super.1999). "Thus, in considering the trial court's order denying judgment n.o.v., we must determine merely whether competent evidence of record supports the elements of the underlying cause of action." *Id.*

> In asbestos litigation, evidence is sufficient to establish product identity where the record shows that plaintiff inhaled asbestos fibers shed by that manufacturer's specific product. *See Lilley*, 596 A.2d at 207. The evidence [of exposure] must demonstrate that the plaintiff worked, on a regular basis, in physical proximity with the product, and that his contact with it was of such a nature as to raise a reasonable inference that he inhaled asbestos fibers that emanated from it. *See Samarin v. GAF Corp.*, [ ] 391 Pa.Super. 340, 571 A.2d 398, 405 (citing *Eckenrod*, [ ] 375 Pa.Super. 187, 544 A.2d [50,] 52 ([1988] ). "A plaintiff must establish more than the presence of asbestos in the workplace. He must prove that he worked in the vicinity of the product's use." *Eckenrod*, [544 A.2d] at 52. However, he need not demonstrate the specific level or duration of his exposure. *Junge v. Garlock, Inc.*, [ ] 427 Pa.Super. 592, 629 A.2d 1027, 1029 (1993)[.]

*Coward*, 729 A.2d at 622–23 (internal citations modified for form).

¶ 34 Upon consideration of the evidence adduced to establish that Franklin Andaloro was exposed to products manufactured by John Crane, Inc., we find the evidence legally sufficient to establish both exposure and product identity. Prior to his death from mesothelioma, Andaloro attested that he had worked with asbestos products for a period of eight years at the

Philadelphia Naval Ship Yard. R.R. at 468a. He recalled cutting asbestos packing for application to valve stems while he trained apprentices, and he remained in the area during clean-up when the other workers' use of brooms and blowers caused the air "to get dusty somewhat." R.R. at 468a–472a. He remembered specifically that the name "Crane packing" appeared on some of the packages of material he and the other workers used. R.R. at 502a. Although John Crane urges in its brief that such a designation can only denote another defendant in whose moniker the name "Crane" also appeared, its assertions bear more properly on the weight of the evidence and, accordingly, have no bearing on this issue of legal sufficiency. We conclude, consequently, that John Crane has failed to establish any basis for entitlement to judgment n.o.v. Its assertions to the contrary are of no merit.

¶ 35 In its second question on appeal, John Crane asserts that the trial court made prejudicial commentary on the evidence in the damages phase of the trial, erred in charging the jury that asbestos products "are inherently dangerous" and "require adequate warnings," and erred in consolidating the cases for trial. This question argues three different issues. In support of its first issue, Crane asserts that the court prejudiced the jury when it stated during the closing charge that "these three men went through a very harrowing experience." Brief for Appellee at 23. Crane argues that the court's statement was sufficient basis for a mistrial and that the court's refusal to grant a mistrial over counsel's objection mandates award of a new trial. Brief for Cross–Appellant at 24. Crane provides no discussion, however, of the circumstances under which a mistrial is properly granted so as to demonstrate any basis for a finding of trial court error and award of a new trial.

Consequently, we find this assertion waived. *See* Pa.R.A.P. 2119(a) (requiring citation to pertinent authority); *Estate of Lakatosh,* 656 A.2d at 1381 (concluding that appellant had waived issue raised on appeal as corresponding argument in brief included only general statements without appropriate citation to authority).

¶ 36 Crane's second issue concerns the court's statement to the jury that asbestos products "are inherently dangerous" and "require adequate warnings." Crane contends that "[b]y instructing the jury that 'asbestos products are inherently dangerous products,' and that 'asbestos products require adequate warnings,' the court essentially eliminated Plaintiffs' burden of proof, excusing them from the duty to show that John Crane's products were unreasonably dangerous without warnings." Brief for Appellee at 29.

¶ 37 Crane's argument misconstrues the content and purpose of the court's instruction. The court's statement that "[a]sbestos containing products are inherently dangerous products" signals the court's recognition of the legal question to be answered by the trial judge before a strict liability case may proceed to the jury. *See Azzarello v. Black Brothers Co., Inc.,* 480 Pa. 547, 391 A.2d 1020, 1026 (1978) (determining that issue of whether a product is "unreasonably dangerous" is question of social policy properly determined by trial judge as a matter of law). Judge Halbert explained his position correctly and succinctly as follows:

[A]sbestos proceedings are strict liability actions. In this light, it is proper for this court to make an initial determination that asbestos is inherently dangerous within the context of explaining strict liability. To hold otherwise would

undermine the precedential basis for trying asbestos actions ... statewide. Trial Court Opinion at 16.

¶ 38 In this instance, the trial court made the statement in question while framing the issue for the jury's consideration of whether John Crane's product, which the court had determined to be dangerous as a matter of law, was defective due to lack of adequate warnings. R.R. at 3136a–3137a. We conclude that the court's discussion was proper and consistent with our Supreme Court's direction. *See Azzarello,* 391 A.2d at 1026. Crane's argument to the contrary is not supported by Pennsylvania law and is therefore without merit.

¶ 39 Also in support of its second question, Crane asserts that the trial court erred in refusing to sever the five cases at issue in this appeal prior to the Phase II trial. Brief for Appellee at 27. Crane argues that the trial of the asbestosis claims of Burkett, Greenhalgh, Ruby, and Swan with the mesothelioma claim of Franklin Andaloro prejudiced the defense by the introduction of extreme images of Mr. Andaloro's distress. *Id.* ("It is extremely prejudicial to consolidate cases featuring different asbestos-related diseases, especially where some of the injured parties are alive and some have died of their asbestos-related diseases.").

¶ 40 Initially, we note that Crane provides no authority in support of its conclusion that prejudice necessarily inured to the defense. Secondly, Crane fails to demonstrate that any prejudice actually accrued. Indeed, the bifurcated manner in which this case was tried renders prejudice far less likely than it might otherwise have been. As the trial court explained:

[B]y the time the Phase II proceeding was heard, separate juries had already determined that each of the Plaintiffs sustained a compensable asbestos-relat-

ed injury and had already determined the amount of damages. Since Andaloro was grouped separately from the other cases during the Phase I proceeding, the fact that Andaloro had mesothelioma would in no way impact upon the prior determination that the other claimants had asbestos-related maladies. Given these circumstances it can hardly be asserted that the jury, as a matter of sympathy, awarded the remaining parties greater damages due to the fatal disease suffered by Andaloro. The Phase II proceeding was limited to determining which defendants were responsible.

Trial Court Opinion at 15. We find the trial court's reasoning on this issue unassailable. Crane cannot show prejudice as a result of the trial court's decision not to sever these cases prior to the Phase II proceeding and consequently, has failed to demonstrate reversible error. *See McClintock v. Works,* 716 A.2d 1262, 1264 (Pa.Super.1998) (reaffirming that a new trial may be granted only upon showing of trial court error that controlled the outcome of the case).

¶ 41 Finally, in its third question on appeal, Crane asserts that the trial court erred in refusing to grant remittitur on the verdict in the Greenhalgh and Swan cases. Brief for Cross–Appellant at 30–35. Again we conclude that this contention is of no merit and has been adequately addressed in the opinion of the trial court. The court stated the following rationale:

Under prevailing case law authority, the Court may only grant a remittitur when an award is so excessive that it shocks our sense of justice. *See Taylor v. Celotex Corp.,* 393 Pa.Super. 566, 574 A.2d 1084, 1098 (1990). To prevail on a petition for remittitur, it is incumbent upon the aggrieved party to establish that the

verdict resulted from partiality, prejudice, mistake or corruption. *See id.*

In asbestos actions such as the case at bar, ... the Superior Court, in *Giordano v. AC & S, Inc.,* 446 Pa.Super. 232, 666 A.2d 710, 713 (1995), adopted the position that excessiveness should be considered from the perspective of the size of the judgment attributable to the individual defendant rather than the amount of the award at large.

Regardless of whether the entire verdict or proportion attributable to each unsettled defendant is considered, the criteria for a remittitur is not satisfied. In [the *Andaloro* case], the injuries proved fatal and Andaloro suffered greatly before succumbing to mesothelioma.

Trial Court Opinion at 20. Although the court tailored its discussion to the Andaloro case, we conclude that the same treatment is appropriate in the Greenhalgh and Swan cases.

¶ 42 James Greenhalgh suffers from pleural thickening and pulmonary asbestosis with lung scarring that has continued to deteriorate with the passage of time. Even the mildest exertion renders Mr. Greenhalgh short of breath, curtailing his activities with family and even the simple pursuit of gardening. Given the continued deterioration of Greenhalgh's condition and the manner in which it limits his enjoyment of life, the trial court did not err in refusing to grant remittitur of Greenhalgh's $800,000 award.

¶ 43 Similarly, Ralph Swan suffers from asbestosis and severe restrictive lung disease. Due to shortness of breath, he encounters difficulty even in tossing a ball with his grandchildren, and must stop to rest after walking only about one block. He lives in fear that his condition will deteriorate and result in his death. In view of the difficulty Mr. Swan sustains in daily living, we find no error in the trial court's refusal to grant remittitur of his $750,000 award. Accordingly, we find no merit in John Crane's request for relief.

¶ 44 For the foregoing reasons, we **VACATE** the judgment of the trial court and **REMAND** these cases for apportionment of damages *pro tanto* in accordance with this Opinion. We **AFFIRM** the trial court's disposition of all other issues raised in these appeals.