Heather HARTNER, in her Own Right, and Kayla Hartner, a Minor, by and Through Her Parent and Natural Guardian, Heather Hartner, Appellees,

v.

HOME DEPOT USA, INC., Appellant.

Superior Court of Pennsylvania.

Argued Sept. 10, 2003.
Filed Oct. 21, 2003.
Reargument Denied Dec. 23, 2003.

Robert B. Lawler, Philadelphia, for appellant.

Stewart Bernstein, Philadelphia, for appellees.

Before: GRACI, OLSZEWSKI, and CAVANAUGH, JJ.

OLSZEWSKI, J.

¶ 1 Appellant, Home Depot USA, Inc., appeals from the judgment entered against it awarding appellee[1] a total of $977,312.50.

¶ 2 The facts of the case are as follows:

On May 30, 1999, Heather Hartner, appellee herein, fell in the parking lot of a Home Depot store located at 4640 Roosevelt Boulevard, Philadelphia. The fall occurred while she was walking through the parking lot pushing a shopping cart. She had her seven-month-old daughter in the cart. While walking, she hit a raised manhole which was unseen by her as it was covered with water. As a result of hitting the manhole, the cart fell over causing her and the baby to fall to the ground. The baby suffered only minor injuries, and her case was settled for $2,000 prior to trial. Appellee, however, suffered injury to her right knee. She

went to physical therapy 24 times within the first four months following the accident and then ceased further treatment. On September 7, 2001, appellee underwent arthroscopic surgery.

¶ 3 The procedural history is as follows:

On February 20, 2001, a complaint for personal injuries was filed in arbitration requesting damages not to exceed $50,000 on behalf of appellee Heather Hartner and her daughter, Kayla. Arbitration was held, and appellee Heather Hartner was awarded $25,000; her daughter was awarded $2,000. Appellees appealed.

¶ 4 On August 21, 2002, a jury trial was held before the Honorable Arthur Kafrissen. The jury assessed damages at $1,000,000 and found that appellee was 5% negligent and appellant 95% negligent. A jury verdict of $950,000 was entered on the docket with notice to the parties. Thereafter, appellee filed a petition for delay damages that was granted. Appellant filed post-trial motions seeking a new trial or, in the alternative, for a remittitur. Home Depot then learned on November 12, 2002, that Judge Kafrissen, who presided over the trial, had retired from the bench. Judge Goodheart was assigned to this case on December 6, 2002. Judge Goodheart was on vacation, however, and did not learn of this assignment until he returned on December 13, 2002. Upon returning from vacation, Judge Goodheart inquired as to the status of the case, and set a hearing date for the post-trial motions to be heard on January 16, 2003. Prior to the hearing, appellee filed a praecipe for entry of judgment on the verdict entered pursuant to Pa.R.C.P. 227.4(1)(b). Home Depot has taken an appeal from the judgment. Although the trial court was divested of jurisdiction in

1. Appellee refers to Heather Hartner only. Kayla Hartner's (Heather's minor daughter) claim was settled prior to the start of trial. Therefore, the only appellee involved is Heather Hartner.

this matter when judgment was entered, Judge Goodheart prepared an opinion pursuant to Pa.R.A.P.1925(a) that we have considered as an advisory opinion.

¶ 5 Home Depot raises the following issues on appeal:

I. Did the trial court commit reversible error in the form of improper rulings and improprieties that resulted in an erroneous jury verdict?

II. Was the application of Pa.R.C.P. 227.4 to this matter unconstitutional and so improper as to warrant remand to allow the trial judge to decide upon the unresolved post-trial motions?

III. Was Judge Goodheart's opinion correct that amount of the verdict was clearly disproportionate between the evidence and the jury award such that a new trial is warranted?

Appellant's Brief at 5.

■ ¶ 6 We first address whether Pa. R.C.P. 227.4(1)(b) was unconstitutionally applied and thus deprived Home Depot of the right to have the trial court decide the issues presently on appeal.

## I. Constitutionality of Pa.R.C.P. 227.4(1)(b).

¶ 7 Home Depot argues that it was denied procedural due process because the entry of judgment pursuant to Rule 227.4(1)(b) prevented the trial court from ruling on Home Depot's post-trial motions after the trial judge unexpectedly retired. Rule 227.4(1)(b) permits any party to an action to praecipe the prothonotary for entry of judgment if

one or more timely post-trial motions are filed and the court does not enter an order disposing of all motions within one hundred twenty days after the filing of

the first motion. A judgment entered pursuant to this subparagraph shall be final as to all parties and all issues and shall not be subject to reconsideration.

Pa.R.C.P. § 227.4(1)(b). The intent of this rule is to give all parties the option of moving the case forward if there is a delay in the trial court's ruling on post-trial motions. The parties have the right to not exercise this option. *See* Pa.R.C.P. 227.4, Explanatory Comment—1995, § I(a).

¶ 8 In support of its argument that Rule 227.4(1)(b) deprived Home Depot of its right to due process, Home Depot relies on *Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). In *Mathews* the U.S. Supreme Court stated that the level of due process required can generally be determined by the consideration of three factors: (1) the nature of the interest at stake; (2) the risk of being deprived of the interest at stake under the current procedure(s) in place balanced against the value of "additional or substitute procedural safeguards"; and (3) the government's interest in the additional or substitute procedural safeguard(s). *Id.* at 335, 96 S.Ct. 893.

¶ 9 First, Home Depot argues that the interest at stake—an interest in a proper and complete ruling—is highly important. Appellant's Brief at 24. We agree that the interest at stake is important. For the reasons set forth below, this Court has the ability to provide as proper and as complete a ruling as appellant could have received by a lower court where the judge who presided over the trial is no longer available to rule on the motions.

¶ 10 Second, Home Depot argues that it was deprived of a proper and complete ruling when its proposed additional safeguard would have permitted a proper and complete ruling. Appellant's Brief at 24. Home Depot suggests that once the judge who presided over the trial is no longer

available to consider post-trial relief, the judge appointed in his stead should have a new 120–day period in which to review the record and rule on motions. This novel approach does not provide either party with an additional safeguard. The judge assigned by the lower court to replace the trial judge does not have the benefit of having personally heard the evidence. He would have to rely solely on the record. When this Court reviews this matter, we also rely solely on the record without the benefit of having heard the testimony. It is the "additional safeguard" sanctioned by our Supreme Court in *Armbruster v. Horowitz*, 572 Pa. 1, 813 A.2d 698 (2002), that allows us to provide as proper and as complete a ruling as the "substituted" trial judge could have provided. *Armbruster* permits this Court to review the issues in the first instance, rather than for abuse of discretion, because the operation of Rule 227.4(1)(b) prevented the trial court ruling on this matter. *Id.* at 705. There is nothing for us to review for an abuse of discretion. Hence, Home Depot's proposed additional safeguard would not be of any value.

¶ 11 Third, Home Depot argues that there is no government interest in promoting Rule 227.4(1)(b). Home Depot has not explained its reasoning, but we will note that there is an interest in promoting the parties' ability to move this case forward to appeal, if they so desire. As we stated in *Gibbs v. Herman*, 714 A.2d 432 (Pa.Super.1998), this Rule "provide[s] an opportunity for a party to the litigation to move the case forward, so that the judgment entered on the verdict is a final, immediately appealable order." *Id.* at 434.

¶ 12 Our review of the *Mathews* factors leads us to conclude that Rule 227.4(1)(b),

as applied to the facts of this case, has not deprived either party of the right to due process.

¶ 13 Even if Home Depot had presented a legitimate constitutional argument regarding Rule 227.4, we note that Home Depot did not comply with Pa.R.A.P. 522. Rule 522 requires a party "who draws in question the constitutionality of any general rule to give notice in writing to the Court Administrator of Pennsylvania in accordance with the procedure prescribed in Pa.R.A.P. 521 (notice to Attorney General of challenge to constitutionality of statute)."[2] After an exhaustive review of the record, we fail to find any evidence that Home Depot has complied with Pa.R.A.P. 522.

¶ 14 Finally, while not dispositive of this issue, we are compelled to address Home Depot's counsel's conduct during the 120–day period between the filing of post-trial motions and the entry of judgment. Home Depot argues that Rule 227.4 should be invalidated because, after Judge Goodheart was appointed to hear the post-trial motions, appellee's counsel never informed the judge that the 120–day deadline was approaching, appellee's counsel never informed the judge of their intent to file for judgment, and appellee's counsel never informed Home Depot that Judge Goodheart had been appointed to preside over this case. We find Home Depot's argument preposterous. First, there was no duty on appellee's counsel to inform the judge of the deadline or of his strategy regarding this case. Second, there was no duty on appellee to notify Home Depot of Judge Goodheart's appointment. The duty was on Home Depot to take steps to protect itself from the

---

2. Pa.R.A.P. 521 requires immediate notice in writing "together with a copy of the pleadings or other portion of the record raising the issue, and to file proof of service of such notice."

entry of judgment. Home Depot learned of Judge Kafrissen's departure from the bench on November 12, 2002. Appellant's Brief at 26. The 120 days did not expire until December 30, 2002. Home Depot had seven weeks to institute an adequate follow-up system to ascertain which judge had been appointed to the case. Home Depot also had seven weeks to persuade appellee's counsel to enter into an agreement to not praecipe the court for the entry of judgment on the 121st day.

¶ 15 We note that Judge Goodheart was appointed to this case on December 6, 2002. The judge was on vacation and returned to court on December 13, 2002. If Home Depot had been conducting itself in a proper manner, it could have learned of the judge's appointment in time to prepare a petition for presentation to the judge as early as December 13, 2002, requesting that the post-trial motions be ruled upon prior to December 30, 2002. It is inappropriate for Home Depot to complain that Rule 227.4(1)(b) has operated an injustice when Home Depot never made attempts to protect itself.

■ ¶ 16 Holding that the trial court was constitutionally divested of jurisdiction when judgment was entered pursuant to Rule 227.4(1)(b), we turn to the remaining issues raised by Home Depot.

## II. Improper rulings by the trial court.

¶ 17 The first issue is whether the trial court committed improper rulings that resulted in the verdict. Home Depot alleges several errors, and we will address each of them in turn.

A. The trial judge committed reversible error when no one with knowledge disclosed His Honor's prior legal practice relationship with [Appellee's] law firm.

Appellant's Brief at i.

■ ¶ 18 The Canon of Ethics call for disclosure of prior relationships that may make an appearance of a conflict. While we agree that Judge Kafrissen should have disclosed his prior relationship with the law firm representing appellee, this error is harmless. The judge worked for the law firm that represented appellee nearly 30 years ago; since that time, all of the partners with whom Judge Kafrissen worked had retired, and had been retired for years prior to this trial. R.R. at 632a. Therefore, Home Depot was not prejudiced in any way by this nondisclosure; thus, no relief is due.

¶ 19 Subissues B, C, F are discussed below:

B. The Trial Judge committed reversible error when he refused to instruct the jury on the Open and Obvious Doctrine.

C. The Trial Judge committed reversible error when he gave an improper jury instruction on comparative negligence to the jury to consider.

F. The Trial Judge committed reversible error when he allowed the jury to consider damages of humiliation and embarrassment.

Appellant's Brief at i, ii.

¶ 20 We agree with Judge Goodheart's advisory opinion, which states: "though there were perhaps some points that I would have made differently—I believe that his instructions to the jury were sufficiently accurate and complete, and that they provide no basis for a grant of post-trial relief." Trial Court Opinion, 4/30/03, at 4–5.

¶ 21 In reviewing the instructions, we find them to be complete and non-prejudicial. Therefore, we do not believe that Home Depot was prejudiced by the instructions given.

¶ 22 The next sub issue is:

D. The Trial Judge committed reversible [error] when he overruled [Appellant's] objections to the testimony of [Appellee's] medical expert based on the late submission of plaintiff's medical expert's supplemental reports.

Appellant's Brief at i.

¶ 23 Our review of the record indicates that Dr. Corcoran did not testify about the contents of the report. The report was not mentioned or introduced at trial. There was no evidence for the trial court to exclude.

¶ 24 Finally, the next sub issue is:

E. The Trial Judge committed reversible error when he allowed into evidence the medical records of Kayla Hartner who was no longer a party to this action.

Appellant's Brief at i.

¶ 25 The report was admitted into evidence, although it was irrelevant. It was admitted outside the presence of the jury, and it was never given to the jury during their deliberations. The only time the report may have been referred to was during the closing argument by appellee's counsel; but since the closing was not transcribed, we cannot assume that this is true.

¶ 26 We do not see how this report, albeit Irrelevant, was prejudicial to Home Depot when the jury never saw the report. Therefore, this argument is meritless.

## III. Jury verdict against the weight of the evidence.

¶ 27 "[W]here a properly preserved weight of the evidence claim is raised on appeal and the judge who presided at trial failed to rule on the claim and is now permanently unavailable to do so, the claim must be reviewed by the appellate tribunal in the first instance." *Armbruster v. Horowitz*, 572 Pa. 1, 813 A.2d 698,

705 (2002). Once judgment is entered, the trial court may not consider the issues on appeal. *Id.* at 702, n. 3, (citing Pa.R.C.P. 227.4). Therefore, the judge who presided at trial is permanently unavailable to rule on this claim, whether he is on the bench at this time or not. We will review the evidence in the first instance.

¶ 28 Appellee sustained a knee injury, either by twisting the knee or through an impact with an object. The pain persisted and she sought treatment. Appellee went to physical therapy 24 times in the first four months after the accident. Following a gap in treatment, appellee sought the care of Dr. Corcoran, an orthopaedic specialist. Dr. Corcoran, diagnosed appellee with chondromalacia. An MRI showed the presence of a loose foreign body in the knee. An arthroscopy was performed, but no loose body was located. During surgery Dr. Corcoran discovered that appellee had a Grade III chondromalacia. Chondromalacia is damaged cartilage in the knee. The standard treatment, which was performed on appellee, is to sand the rough spots of the cartilage so that the knee will move with less discomfort. Dr. Corcoran testified that the cartilage cannot be made "100 percent new." He also could not say within a reasonable degree of medical certainty whether appellee would progress to a Grade IV chondromalacia over time. If, however, appellee's knee does progress to a Grade IV, the treatment options are varied and could *possibly* include knee replacement. Dr. Corcoran testified that there are a number of ways to cause chondromalacia, including impact with the cartilage. Home Depot's expert witness, Dr. Simon, testified that most people over age 35 have chondromalacia. Dr. Corcoran did not agree.

¶ 29 Dr. Corcoran testified that chondromalacia can be aggravated by daily movement such as bending, stair climbing, and

kneeling. Despite those daily aggravators, appellee testified that she now uses the gym three or four days a week. Appellee testified that she has pain, stiffness, and swelling in the knee, and currently takes Vioxx for the pain. Appellee did not exhibit stiffness or swelling during her examination by Home Depot's expert witness, Dr. Simon.

¶ 30 During her treatment, appellee changed employment twice and did not tell at least one of her new employers that she had a knee injury. Appellee has no wage loss claim, and her medical bills totaled just under $10,000. There is no indication that appellee will have ongoing treatment.

¶ 31 If the jury's verdict is "so contrary to the evidence as to shock one's sense of justice," a new trial may be awarded. *Commonwealth v. Brown,* 538 Pa. 410, 648 A.2d 1177, 1189 (1994). We are shocked by the jury's award of $1,000,000 and find that the award is against the weight of the evidence. Accordingly, we remand this case for a new trial on the sole issue of damages.

¶ 32 Judgment VACATED. Case REMANDED for new trial on the sole issue of damages. Jurisdiction relinquished.

¶ 33 CAVANAUGH, J., Concurs in the Result.