Oscar L. SMALLS and Lizzie
Smalls, Appellees

v.

PITTSBURGH–CORNING CORP.;
Greene Tweed & Co., Inc.; A.W.Ches-
terton, Inc., Quigley Co., Inc., Pfizer,
Inc.; Gaf Corp.; Rubberroid Co., Inc.;
Owens Illinois, Inc.; Flexitallic
Gasket Co.; Flintkote Co.; Arm-
strong World Indus., Inc.; U.S. Gyp-
sum Co.; Porter Hayden Co.; Foster
Wheeler Corp., Inc.; Pars Mfg. Co.;
J.H. France Refractories Co.; Ray
Oil Burner Co.; A.C. & S. Corp.;
Turner–Newall Ltd.; Carlisle Corp.;
Allied Corp.; Uniroyal Inc.; National
Gypsum Co.; Brand Insulations, Inc.;
Selas Corp. of America; Bickley Fur-
naces, Inc.; Armstrong Cork Co.; Ri-
ley Stoker Corp.; Drever Furnaces;
Keeler Dorr–Oliver Boiler Co.; Cleav-
er Brooks; W.R. Grace & Co.; Carri-
er Corp.; Crane Packing; Rapid
American Corp.; Williams & Davis
Boiler, Inc.; Wagner Elec. Co.;
Square D. Co.; Cutler–Hammer Co.;
Clark Controller Co.; Combustion
Engineering, Inc., Appellees.

Appeal of: John Crane, Inc., Appellant.

Superior Court of Pennsylvania.

Argued Feb. 4, 2003.
Filed Feb. 13, 2004.

**412**

David F. Abernathy, Philadelphia, for appellant.

William C. Bensley, Philadelphia, for Smalls, appellees.

BEFORE: ORIE MELVIN, BOWES and BECK, JJ.

OPINION BY BOWES, J.:

¶ 1 Appellant, John Crane, Inc., appeals from the judgment entered on the verdict after a jury awarded Oscar Smalls $2,000,000 for injuries related to asbestos exposure and awarded his wife, Lizzie Smalls (collectively "Appellees"), $500,000 for loss of consortium. We reverse and remand for a new trial on the sole issue of damages.

¶ 2 In 1954, Mr. Smalls began employment with the Philadelphia Housing Authority. For twenty-five years, Mr. Smalls performed all aspects of plumbing maintenance for the Housing Authority at its Raymond Rosen housing community. During this period, he worked with a variety of asbestos-containing materials that produced dust when he handled them. Thereafter, Mr. Smalls was promoted to superintendent of another public housing community. In 1984, Mr. Smalls retired voluntarily without health complications.

¶ 3 In 1997, Mr. Smalls, who previously maintained a twenty-year smoking habit, sought medical treatment from his family doctor for shortness of breath. The doctor did not diagnose an asbestos-related illness. Around this time, Mr. Smalls was hospitalized for internal bleeding resulting from a condition in his abdomen and colon. Following his release, Mr. Smalls did not continue to seek medical treatment for his troubled breathing. Indeed, Mr. Smalls was not treated by any doctor until 1999, after being contacted by an attorney who represented one of Mr. Smalls's deceased co-workers. This action followed.

¶ 4 The trial court conducted a reverse-bifurcated trial. In phase one, the jury determined whether Mr. Smalls was afflicted with an asbestos-related condition and, if so, the amount of damages he was entitled to receive as compensation for his injuries. In phase two, the jury deter-

mined whether Mr. Smalls was exposed to Appellant's product, whether its product was defective, and whether exposure to the product was a substantial factor contributing to the development of the asbestos-related disease.

¶ 5 On December 10, 2001, the jury found that Mr. Smalls suffered from an asbestos-related disease and awarded him $2,000,000. In addition, it awarded Mrs. Smalls $500,000 for loss of consortium. The following day, the jury found that Mr. Smalls's exposure to Appellant's defective product was a substantial factor in the development of the asbestos-related disease. This appeal followed.

¶ 6 Appellant raises four issues: 1) whether the trial court erroneously admitted evidence of subsequent remedial measures; 2) whether the trial court improperly admitted Appellees' scientific evidence of causation; 3) whether the trial court erred in refusing to grant a remittitur of the damages; and 4) whether the trial court erred in including the loss of consortium award in the calculation of delay damages.

■ ¶ 7 First, Appellant contends that the trial court erred in allowing Appellees to introduce evidence that following Mr. Smalls's exposure, Appellant began emblazoning its product with the following warning: "Caution, Contains asbestos fibers. Avoid creating dust. Breathing asbestos dust may cause serious bodily harm." N.T. Trial, 12/10/01, at 112.

■ ¶ 8 We review the trial court's determinations regarding the admissibility of evidence for a manifest abuse of discretion. *Eichman v. McKeon,* 824 A.2d 305 (Pa.Super.2003). Instantly, the trial court's decision to admit the evidence of a subsequent remedial measure is supported by our interpretation of Pa.R.E. 407. Rule 407 provides as follows:

When, after an injury or harm allegedly caused by an event, measures are taken which, if taken previously, would have made the injury or harm less likely to occur, evidence of the subsequent measures is not admissible to prove that the party who took the measures was negligent or engaged in culpable conduct, or produced, sold, designed, or manufactured a product with a defect or a need for a warning or instruction. **This rule does not require the exclusion of evidence of subsequent measures when offered for impeachment,** or to prove other matters, if controverted, such as ownership, control, or feasibility of precautionary measures.

(emphasis added). Although evidence of remedial measures generally is not admissible in a product liability case under Rule 407, there are recognized exceptions to the rule. Where, as here, the evidence is offered to impeach a witness's claim, it is admissible. *See Duchess v. Langston Corp.,* 564 Pa. 529, 769 A.2d 1131 (2001) (evidence of subsequent change in machine design was admissible in products liability action to impeach defendant's claims that changes were impractical).

¶ 9 In the case *sub judice,* Appellant introduced evidence that its asbestos-containing products did not release significant amounts of asbestos dust, and therefore, it could not have been a substantial factor in causing Mr. Smalls's asbestos-related disease. Specifically, George McKillop, Appellant's former product manager, testified that he handled Appellant's valve-packing products thousands of times, and it never created any dust. N.T., 2/10/01, at 104. Under these circumstances, we conclude that the trial court properly allowed evidence of the warning to impeach and rebut the witness's claim that the product was not prone to create dust. This conclusion

is consistent with Rule 407. *See Duchess, supra.*

¶ 10 Next, Appellant asserts that the trial court erred in allowing Dr. Richard Katz, Appellees' expert, to testify as follows: "Each and every breath of asbestos fibers is [a] significant and substantial contributing factor to the asbestos related disease that Mr. Smalls has." N.T. Trial, 12/4/01, at 32. Appellant argues that the opinion was inadmissible because it had no basis in fact nor general acceptance in the scientific community. We disagree.

¶ 11 Again, we observe that the admission or exclusion of evidence is within the discretion of the trial court, and it will not be reversed absent a manifest abuse of that discretion. *Eichman, supra.* As we previously have held that this type of opinion evidence is not only admissible, it is sufficient to demonstrate a *prima facie* case of liability against an asbestos manufacturer if believed by the fact finder, *see Junge v. Garlock Inc.*, 427 Pa.Super. 592, 629 A.2d 1027 (1993), the trial court's decision to admit the statement was not tantamount· to an abuse of discretion. Moreover, we observe that Dr. Katz is certified by the American Board of Medical Specialties in pulmonary disease, and his experience and expertise is sufficient to testify about the relationship between breathing asbestos and the development of asbestos-related diseases.

¶ 12 Next, Appellant argues that the awards were excessive. We agree with this conclusion. Although we uphold the trial court's disposition on the aforementioned issues, we find that the respective awards to Appellees are so patently excessive that the trial court erred in failing to grant remittitur of the $2,500,000 award. Consequently, we are constrained to re-verse the trial court's determination that remittitur was inappropriate and remand for a new trial to determine damages.

¶ 13 We review the trial court's decision to deny Appellant's request for remittitur for an abuse of discretion or error of law.[1] *Bindschusz v. Phillips*, 771 A.2d 803 (Pa.Super.2001). Remittitur is justified only in limited instances such as here, where the verdict plainly is excessive, exorbitant, and beyond what the evidence ·warrants, *Murray v. Philadelphia Asbestos Corp.*, 433 Pa.Super. 206, 640 A.2d 446 (1994), *aff'd sub nom. Simmons v. Pacor, Inc.*, 543 Pa. 664, 674 A.2d 232 (1996), or where the verdict resulted from partiality, prejudice, mistake, or corruption. *Rafter v. Raymark Ind.*, 429 Pa.Super. 360, 632 A.2d 897 (1993).

¶ 14 On appeal, we review whether the jury verdict so shocks the sense of justice such that the trial court should have granted remittitur as a matter of law. *Bey v. Sacks*, 789 A.2d 232 (Pa.Super.2001). We cannot merely substitute our judgment for that of the fact-finder; *Botek v. Mine Safety Appliance Corp.*, 531 Pa. 160, 611 A.2d 1174 (1992), and we must review the record "in light of the evidence accepted by the jury." *Bindschusz*, 771 A.2d at 813. Our Supreme Court reiterated these principles as follows: "In reviewing the award of damages, the appellate courts should give deference to the decisions of the trier of fact who is usually in a superior position to appraise and weigh the evidence." *Ferrer v. Trustees of University of Pennsylvania*, 573 Pa. 310, 343, 825 A.2d 591, 611 (2002) (quoting *Delahanty v. First Pennsylvania Bank*, 318 Pa.Super. 90, 464 A.2d 1243, 1257 (1983)).

¶ 15 We do not read our admittedly circumscribed standard of review so as to

---

1. Regrettably, there was no trial court opinion filed in this matter. The motion for post-trial relief was denied in a one-sentence order by the trial court.

preclude this Court from ever finding that a trial court abused its discretion in denying remittitur. Although prudence dictates that we exercise our authority sparingly, appellate courts are not powerless to grant remittitur in instances where the verdict is substantially larger than that which the plaintiff's evidence can sustain. *See Ferrer, supra* (remittitur of $5,000,000 verdict was warranted where plaintiff's expert testified that compensatory damages totaled $2,900,000). *Cf. Robertson v. Atlantic Richfield Petroleum Products Co.,* 371 Pa.Super. 49, 537 A.2d 814 (1987) (Superior Court can reduce award where it is manifestly clear that trial court erred in entering judgment on jury verdict larger than verdict winner was entitled to recover by his own showing); *Goldberg ex rel. Goldberg v. Isdaner,* 780 A.2d 654 (Pa.Super.2001) (court may reduce or modify jury verdict for personal injuries where award is grossly exorbitant).

¶ 16 For the following reasons, we find that the evidence adduced during trial in the case *sub judice* fails to support either the $2,000,000 verdict in favor of Mr. Smalls or the $500,000 verdict in favor of Mrs. Smalls, and the trial court abused its discretion in concluding that the excessive awards did not shock its sense of justice.

¶ 17 The focus of our review is as follows:

In determining whether a jury's award of damages is supported by the evidence, the following factors are taken into account:

1.) the severity of the injury;

2.) whether the injury is demonstrated by objective physical evidence or subjective evidence;

3.) whether the injury is permanent;

4.) the plaintiff's ability to continue employment;

5.) disparity between the amount of out of pocket expenses and the amount of the verdict; and

6.) damages plaintiff requested in his complaint.

*Stoughton v. Kinzey,* 299 Pa.Super. 499, 445 A.2d 1240, 1242 (1982).

¶ 18 Appellee contends that we should examine only the amount of the verdict attributable to Appellant in determining whether the award was excessive. However, our review is not that narrow. The perceived principle that we must consider only the judgment attributable to an individual defendant is derived from *Giordano v. AC & S, Inc.,* 446 Pa.Super. 232, 666 A.2d 710 (1995). In a footnote, the *Giordano* court observed that since asbestos cases arise from product liability theory, which apportions damages among manufacturers, we should limit our consideration of excessiveness to the size of the judgment entered against an individual defendant rather than the size of the entire verdict. However, because the view espoused in that footnote was not dispositive of any issue raised in that case, the principle is *obiter dictum.* The *Giordano* court additionally opined that it would not have found error even if it had examined the size of the entire verdict. Likewise, in *Andaloro v. Armstrong World Ind.,* 799 A.2d 71, 89 (Pa.Super.2002) (emphasis added), we affirmed a similar conclusion:

In asbestos actions such as the case at bar, the Superior Court, in *Giordano v. AC & S, Inc.,* 446 Pa.Super. 232, 666 A.2d 710, 713 (1995), adopted the position that excessiveness should be considered from the perspective of the size of the judgment attributable to the individual defendant rather than the amount of the award at large. **Regardless of whether the entire verdict or proportion attributable to each unsettled defendant is considered, the criteria for**

**a remittitur is not satisfied.** In [the *Andaloro* case], the injuries proved fatal and [Mr.] Andaloro suffered greatly before succumbing to mesothelioma.

This passage supports the conclusion that the principle is *dictum.* However, assuming *arguendo* that we are bound to employ this principle, we nevertheless believe that a new trial is appropriate in this case.

¶ 19 Although asbestosis is a permanent condition, Appellees' evidence does not justify the damage award when weighed against the remaining factors. Indeed, the evidence demonstrates that Mr. Smalls's injuries were not severe. At the time of trial, Mr. Smalls was a seventy-four-year-old man in poor physical condition who suffered from a myriad of ailments unrelated to asbestos exposure. He had been diagnosed with chronic obstruction pulmonary disease, anemia, cirrhosis of the liver, abdominal and colon conditions, and previously-contracted pneumonia. Moreover, he smoked for twenty years prior to quitting.

¶ 20 The only visible symptom that Appellee manifested relating to asbestosis was shortness of breath following moderate exercise such as walking three or four blocks or ascending several flights of stairs. However, considering Appellee's age and lifestyle, when coupled with the fact that he did not seek continuing medical attention until prompted by a lawyer, this impairment is insubstantial.

¶ 21 After viewing the results of three x-rays, Dr. Katz opined that Mr. Smalls suffered from pleural thickening and pulmonary asbestosis. However, the remainder of Dr. Katz's testimony undermined this conclusion. Dr. Katz conceded that Mr. Smalls did not exhibit any of the classic symptoms of severe asbestosis such as symptomatic coughing, crackles or rales associated with congested lungs, or swollen extremities. He also admitted that two equally-qualified experts could interpret the same x-ray differently. Indeed, after reviewing the x-ray results, Dr. Epstein, Appellant's medical expert witness, opined that Mr. Smalls did not suffer from asbestos-related diseases but had experienced pulmonary scarring in connection with his pneumonia. Likewise, Mr. Smalls's family doctor never diagnosed him with any asbestos-related disease. Consequently, there was scant physical evidence that Mr. Smalls, in fact, suffered from a severe asbestos-related condition.

¶ 22 Finally, the excessive award is only for pain and suffering. Since Mr. Smalls retired voluntarily in 1984 and discontinued treatment for his strained breathing, there was no demand for lost wages, out-of-pocket expenses, or other economic claim. Therefore, in light of the aforementioned factors, we do not believe the $2,000,000 award for pain and suffering is appropriate even when examined in the limited context of the $666,667 judgment attributable to Appellant.

¶ 23 Further, the cases that initially appear to support Appellees' argument are distinguishable since the plaintiffs in those cases presented substantial evidence to justify the juries' awards. In upholding the awards in *Andaloro, supra,* we summarized the evidence as follows:

James Greenhalgh suffers from pleural thickening and pulmonary asbestosis with lung scarring that has continued to deteriorate with the passage of time. Even the mildest exertion renders Mr. Greenhalgh short of breath, curtailing his activities with family and even the simple pursuit of gardening. Given the continued deterioration of Greenhalgh's condition and the manner in which it limits his enjoyment of life, the trial court did not err in refusing to grant remittitur of Greenhalgh's $800,000 award.

Similarly, Ralph Swan suffers from asbestosis and severe restrictive lung disease. Due to shortness of breath, he encounters difficulty even in tossing a ball with his grandchildren, and must stop to rest after walking only about one block. He lives in fear that his condition will deteriorate and result in his death. In view of the difficulty Mr. Swan sustains in daily living, we find no error in the trial court's refusal to grant remittitur of his $750,000 award. Accordingly, we find no merit in John Crane's request for relief.

*Andaloro,* 799 A.2d at 89.

¶ 24 Unlike the case herein, the evidence produced in *Andaloro,* demonstrated significant suffering by the plaintiffs. Specifically, it showed that the respective plaintiffs experienced continual lung deterioration that produced severe respiratory limitation and ingrained enduring fears that their condition would result in death. Similarly, in *Rafter v. Raymark Ind., supra,* the plaintiff produced ample evidence of his pain and suffering and bolstered that evidence with expert testimony indicating that his throat cancer occurred due to asbestos exposure.

¶ 25 Mr. Smalls's evidence of pain and suffering pales in comparison. At best, the undisputed evidence demonstrates only that a sedentary, seventy-four-year-old man with cirrhosis and a twenty-year smoking habit became winded after moderate exercise and no longer was as active around the house as he once was. Mr. Smalls proffered no evidence to suggest that his condition was deteriorating or that he had a reasonable fear of it deteriorating, which are significant factors that we examined in *Andaloro.*

¶ 26 Finally, there is virtually no evidence to support the $500,000 award for loss of consortium. A loss of consortium claim is intended to compensate one

for "a loss of services, society, and conjugal affection of one's spouse." *Anchorstar v. Mack Trucks, Inc.,* 533 Pa. 177, 180, 620 A.2d 1120, 1122 (1993). The record herein is devoid of evidence that Mr. Smalls's injuries harmed the marriage. Rather, Mrs. Smalls testified that they have a pleasant marriage and that they are happy. Although Mr. Smalls has curtailed his household chores, this fact hardly warrants a $500,000 award. Thus, the award for loss of consortium cannot stand.

¶ 27 For all of the foregoing reasons, we conclude that the trial court abused its discretion in failing to order remittitur or grant a new trial on the excessive damage award. However, having reached this conclusion, we must determine the appropriate action to resolve this matter; that is, whether we should grant remittitur on appeal and direct the trial court to enter judgment accordingly, remand for the trial court to fashion remittitur, or order a new trial on the issue of damages.

¶ 28 In *Ferrer, supra,* our Supreme Court recently confronted this issue, and in granting remittitur, it reduced the plaintiff's $5,000,000 award to $2,900,000. However, in that case, the court based its award upon expert testimony that established the maximum extent of the plaintiff's loss at $2,900,000. Hence, the Supreme Court determined remittitur based on evidence contained in the record.

¶ 29 Conversely, the record in the present case precludes a similar determination. This record not only lacks significant evidence supporting Appellees' claim for pain and suffering, but it also reveals that Appellees sought zero out-of-pocket damages. *Cf. Kinzey, supra* (nature of evidence and disparity between verdict and out-of-pocket-expenses are among factors considered in determining remittitur). Consequently, an award fashioned by this Court based on the record before it would be arbitrary.

¶ 30 This Court addressed a similar situation in *Hartner v. Home Depot USA, Inc.,* 836 A.2d 924 (Pa.Super.2003), and we concluded that a new trial was warranted for the purpose of determining damages because the $1,000,000 award for the plaintiff's personal injury was against the weight of the evidence. In that case, the award was supported only by $10,000 actual damages and subjective evidence relating to the plaintiff's pain and suffering. *Hartner* is dispositive of the case *sub judice* wherein the jury awarded Appellees $2,500,000 despite an utter lack of actual damages and inadequate evidence supporting their claims of pain and suffering and loss of consortium. Therefore, consistent with *Hartner,* we must vacate the judgment entered on the verdict and remand for a new trial on the sole issue of damages. As a result of our disposition, we need not address Appellant's remaining claim concerning the improperly calculated delay damages.

¶ 31 Judgment vacated. Matter remanded for a new trial to determine damages. Jurisdiction relinquished.

