J-A01035-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT OP 65.37**

| | | |
|---|---|---|
| JOANN RODRIGUEZ, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| KEYSTONE QUALITY TRANSPORT CO., | : | |
| | : | |
| Appellant | : | No. 2287 EDA 2019 |

Appeal from the Judgment Entered July 16, 2019
in the Court of Common Pleas of Philadelphia County
Civil Division at No(s):  December Term 2017 No. 00517


BEFORE:   BENDER, P.J.E., OLSON, J. AND STRASSBURGER, J.*

MEMORANDUM BY OLSON, J.:

**FILED JUNE 15, 2023**

Appellant, Keystone Quality Transport Co. (Keystone), appeals from a judgment entered on July 16, 2019 in favor of Joann Rodriguez (Rodriguez).[1] The case returns to us after our Supreme Court vacated our original order entered on July 23, 2021, and remanded this matter for application of the

---

[1] Keystone purported to appeal from a June 13, 2019 order denying its motion for post-trial relief; however, an appeal properly lies from the entry of judgment following the trial court's disposition of post-trial motions. **See Fanning v. Davne**, 795 A.2d 388 (Pa. Super. 2002).  Although Keystone's notice of appeal was filed prematurely, final judgment was entered on July 16, 2019; hence, the notice of appeal relates forward to that date.  **See** Pa.R.A.P. 905(a)(5); **see also Drum v. Shaul Equipment and Supply Co.**, 787 A.2d 1050, 1052 n.1 (Pa. Super. 2001) (entry of final judgment during pendency of appeal is sufficient to perfect appellate jurisdiction).  We have amended the caption accordingly.


*Retired Senior Judge assigned to the Superior Court.

J-A01035-21

harmless error standard articulated in *Grove v. Authority of Allegheny County*, 218 A.3d 877 (Pa. 2019).[2]  Upon review, we affirm the judgment originally entered in the trial court.

The underlying case stems from a motor vehicle accident that occurred on September 1, 2006.  The trial court summarized the relevant facts as follows.

> At the time of the incident, [] Rodriguez, a nurse's assistant, was a front seat passenger in an ambulance owned by defendant, Keystone, and operated by its employee, [Daniel McCanns],[FN1] which rear-ended a car stopped at a red light at the intersection of Girard Avenue and 38th Street in Philadelphia.  At the time, the ambulance was transporting [to court] a patient of the hospital where [] Rodriguez worked.  Per her job duties, [] Rodriguez was required to escort patients to and from the hospital after a visit to court for a hearing.  She was not an employee or borrowed servant of Keystone, therefore worker compensation implications were not [implicated in her claims against Keystone].
>
> [Rodriguez sued Keystone for damages to compensate for lost wages and injuries, contending that Keystone's employee operated the ambulance negligently].  A jury trial commenced on

---

[2]  When this appeal was originally before this Court, we consolidated it with a related appeal docketed at 157 EDA 2020.  At Superior Court docket number 157 EDA 2020, Keystone challenged a December 12, 2019 trial court order that directed it to post an appeal bond that conformed to Pa.R.A.P. 1734.  Since our original order vacated the judgment entered in the trial court (and challenged on appeal at Superior Court docket number 2287 EDA 2019), our prior disposition dismissed the appeal lodged at 157 EDA 2020 as moot. Rodriguez did not challenge our disposition at docket number 157 EDA 2020 in her petition for allowance of appeal and that matter was not included within the Supreme Court's remand order.  Hence, we shall treat the matter docketed at 157 EDA 2020 as fully and finally concluded and shall not address it further in this memorandum.

- 2 -

January 29, 2019[,] and concluded with a verdict in her favor and against Keystone totaling $610,000.00.[FN2] At trial, Rodriguez testified that [it was raining on the day of the accident] and the streets were wet. She testified that the ambulance driver was driving too fast and recklessly throughout the trip. Just prior to the accident, she estimated the speed of the ambulance as between 50 and 60 miles per hour. She made this observation just prior to observing the traffic stopped ahead at a red light. Keystone contested the speed of the vehicle and its employee[, Cory Lundberg, who was riding in the back of the ambulance,] testified [the ambulance] was traveling in the 35 [mile-per-hour] range.

The ambulance driver then attempted to make a sudden stop, but the ambulance skidded and slid on the trolley tracks, [colliding with] the rear of a car stopped at a red traffic light. [] Rodriguez testified that she [felt] immediate pain in her left leg and went to her employer[-]referred medical office immediately after returning to the hospital.

_____

[FN1] Mr. McCan[n]s did not attend the trial.

[FN2] The jury awarded $10,000.00 for lost wages and $600,000.00 for pain and suffering.

_____

An MRI of [Rodriguez's] lumbar spine revealed a large herniated and protruding disc at L5-S1 impinging on the S1 nerve. She followed the doctors' advice and underwent physical therapy for approximately six months. She was out of work for five months and then placed on limited duty for three and [one-half] months. The jury [heard] evidence of … her lost wages to be $20,0000.00. Her workers compensation doctor, Mark Allen, M.D., testified that the injuries she suffered were permanent, severe[,] and a "ticking time bomb" with a potential for serious future complications and possibly even surgery. After hearing all of the evidence presented by both parties, the jury deliberated and returned the aforesaid verdict.

Trial Court Opinion, 5/18/2020, at 7-8 (footnotes in original; party designations and unnecessary capitalization altered).

Keystone timely filed a post-trial motion, which the trial court denied on June 13, 2019. Judgment was entered in Rodriguez's favor on July 16, 2019. Keystone filed a notice of appeal, which was docketed at 2287 EDA 2019. The trial court ordered Keystone to file a concise statement of matters complained of on appeal pursuant to Pa.R.A.P. 1925(b) and Keystone complied.

On appeal, this Court vacated the judgment entered in favor of Rodriguez, concluding that the trial court erred, under Pa.R.E. 407, in admitting evidence that Keystone terminated the ambulance driver after the accident. *See Rodriguez v. Keystone Quality Transp. Co.*, 260 A.3d 160, at *4-7 (Pa. Super. 2021) (unpublished memorandum). We further concluded that Keystone was entitled to a new trial since the erroneous admission of the driver's termination was not harmless.

On October 20, 2021, Rodriguez filed a petition for allowance of appeal raising two claims. Rodriguez first claimed that this Court erred in concluding that admission of the driver's termination constituted a subsequent remedial measure under Pa.R.E. 407. Second, Rodriguez asserted that any erroneous admission of such evidence was harmless. On April 12, 2022, our Supreme Court granted Rodriguez's petition as to her

J-A01035-21

second issue only,[3] vacated the prior decision of this Court, and remanded this matter to allow us to consider whether the erroneous admission of the driver's termination was harmless under the standard articulated in **Grove, supra**.

Before we address the issues that currently confront us, we briefly review the facts and legal conclusions reached by our Supreme Court in **Grove**. In that case, a pedestrian filed a negligence action against a county transportation authority to recover for severe injuries she sustained when she was struck by a county bus. At a charging conference convened at the conclusion of trial, the county authority requested a negligence *per se* instruction and asked the court to charge the jury on four provisions in the Motor Vehicle Code that pertained to a pedestrian's duty of care. The trial court declined the authority's request, noting that the pedestrian was not cited for any statutory violation referenced by the authority.[4] Ultimately, the jury reached a verdict, finding the pedestrian and the authority each 50%

---

[3] Since the Supreme Court declined to review Rodriquez's claim that this Court erroneously concluded that the termination of the driver constituted a subsequent remedial measure under Pa.R.E. 407, we shall treat our earlier disposition of that issue as final.

[4] During deliberations, the jury submitted three written questions to the trial court, two of which touched upon a pedestrian's exercise of care. In response, the authority renewed its request that the court instruct the jury about the Motor Vehicle Code provisions. Again, the court refused to instruct the jury in accordance with the authority's request. **See Grove**, 218 A.3d at 883.

- 5 -

negligent. Considering the pedestrian's contributory negligence, the court reduced the jury's award by half and, subsequently, further reduced its verdict to comply with the statutory cap on the liability of a Commonwealth agency. *See* 42 Pa.C.S.A. § 8528(b).

The authority requested a new trial in a post-trial motion which argued that the court erred in refusing to instruct the jury on a pedestrian's duty of care as addressed in the various Motor Vehicle Code provisions highlighted by the authority. The court denied the authority's motion, reasoning that "the most a negligence *per se* instruction could have done for [the authority] would have been to lead the jury to find [the pedestrian] negligent." *Grove*, 218 A.3d at 883. Accordingly, the court concluded that, because the jury found the pedestrian negligent, the absence of the *per se* charge did not impact the jurors' negligence determination and the omission could not have been prejudicial to the authority. *See id*.

After the authority appealed, a divided panel of the Commonwealth Court reversed the trial court's order and remanded for a new trial, concluding that the court failed to properly charge the jury regarding the apportionment of comparative negligence. *Grove v. Port Authority*, 178 A.3d 239, 241 (Pa. Cmwlth. 2018), *appeal granted*, 193 A.3d 343 (Pa. 2019). Noting that the jury's request for guidance concerning a pedestrian's duty of care signified the importance of such instructions, the panel majority found that the trial court's refusal to provide the requested guidance could

have impacted the jury's ultimate apportionment of damages. ***Grove***, 178 A.3d at 249 (finding "a substantial **possibility** that the trial court's refusal to provide [the] requested instructions . . . influenced the jury's apportionment deliberations"). A dissenting panel member agreed with the majority that the trial court should have given the requested negligence *per se* instruction but reasoned that the omission was harmless since such a charge would not have made a difference in the jury's final allocation of fault. ***Grove***, 178 A.3d at 252.

Our Supreme Court rejected the analysis offered by the Commonwealth Court's majority. Substantively, the Supreme Court's analysis recalled that, under Pennsylvania tort law, a negligence *per se* charge related only to the first two elements of a negligence claim, duty and breach of that duty, and not to the element of causation. ***Grove***, 218 A.3d at 888. Since the ***Grove*** jury ultimately found the pedestrian to be negligent, the Court reasoned that the jury found she breached a duty she owed to the authority. Regardless of whether the jury found the pedestrian negligent under a general theory, or because she violated a statute bearing upon a pedestrian's duty of care, the omitted negligence *per se* charge bore no relevance to the jury's deliberations pertinent to the distinct issues of factual causation and the allocation of comparative fault. ***See id***. at 888-889. Hence, in the Court's view, any omission of a negligence *per se*

charge was not a fundamental error and the authority was not prejudiced. *See id*. at 888.

After observing that, "[t]he harmless error doctrine underlies every decision to grant or deny a new trial[,]" *Grove*, 218 A.3d at 888, our Supreme court declared that "an appellate court [may] not grant a new trial absent a finding of [] fundamental error or prejudicial omission." *Id.* Relief in the form of a new trial is unwarranted simply because an irregularity or error occurred during the proceedings, and a speculative conclusion that an irregularity at trial **may** have affected an outcome does not establish valid grounds for a retrial. *See id*. Accordingly, the Supreme Court reversed the order of the Commonwealth Court.[5]

After the Supreme Court vacated our original order and remanded this matter for application of the harmless error standard articulated in *Grove*, this Court directed the parties to file briefs addressing the application of *Grove* to the facts of this case. Both parties have now done so. Keystone urges us to affirm our prior ruling and again vacate the trial court's judgment because the erroneous admission of evidence pertaining to the driver's termination was not harmless. Specifically, Keystone asserts that prejudice was inherent in the trial court's erroneous admission of subsequent

---

[5] In a subsequent decision, the Supreme court suggested that prejudice is shown where there is a reasonable probability that a trial outcome would be different if an error or irregularity had not occurred. *Graham v. Check*, 243 A.3d 153, 173 (Pa. 2020).

remedial measure evidence. *See* Keystone's Brief on Remand at 6. Keystone also claims that the trial court's error was not harmless since counsel for Rodriguez emphasized the evidence and invited the jury to consider it during deliberations. *See id.* at 7. Rodriguez counters that any prejudicial effect arising from the trial court's error is purely speculative since Keystone's counsel conceded that the driver was negligent, and the facts introduced at trial compellingly showed the driver was unable to avoid a rear-end collision because he was operating the ambulance too fast for rainy conditions. *See* Rodriguez's Brief on Remand at 5.

After careful consideration, we agree with the trial court that the erroneous admission of evidence pertaining to the driver's termination was harmless under the standard articulated in *Grove* and in view of the circumstances of this case. Substantial and unrefuted evidence admitted at trial supported the jury's verdict that the negligence of Keystone's ambulance driver led to the rear-end collision which caused the injuries sustained by Rodriguez. At trial, Keystone's employee Lundberg testified that, at the time of the collision, he was seated in the back of the ambulance when he experienced the sudden application of the vehicle's brakes, sensed the ambulance skidding several feet on the rain-slicked trolley tracks, and felt the ambulance collide with a stopped vehicle. In view of this uncontested evidence, there is little reason to conclude that a different outcome was likely if the jury did not learn that Keystone terminated

McCanns after the accident. Additionally, references to McCanns' termination by counsel for Rodriguez do not alter our finding of harmless error since counsel for Keystone conceded, on more than one occasion (including his closing argument), that McCanns' negligence led to the collision in which Rodriguez sustained her injuries.

We are reluctant to accept Keystone's argument that a new trial is warranted because **inherent** prejudice emerged from the trial court's erroneous evidentiary ruling, as such a position would tend to supplant the harmless error inquiry in all cases. In addition, we see little practical difference between Keystone's claim of inherent prejudice as grounds for a new trial and the speculative justifications for retrial that were rejected by the Supreme Court in *Grove*. In short, the record in this case does not establish that the erroneous admission of the driver's termination contributed materially to the jury's determination that Keystones' employee was negligent. Hence, the trial court's error was harmless.

Having concluded that the erroneous admission of evidence pertaining to McCanns' termination following the accident constituted harmless error, we now address the second and third claims Keystone raised in its original submission. In its original second claim, Keystone argued that the trial court erred or abused its discretion in denying Keystone's request for a remittitur of the jury's award. To support this claim, Keystone relied upon Rodriguez's trial testimony in which she stated that she did not feel pain immediately

after the accident, that she returned to work less than a year after the accident, and that she currently experienced only intermittent discomfort approximately four times per month last about 30 to 40 minutes. Keystone's Original Brief at 19-20. In view of these facts, Keystone maintains that the jury's $600,000.00 award for pain and suffering bore no relationship to the claimed injuries and the evidence introduced at trial. **Id.** at 21. As such, Keystone concludes that the verdict does not represent fair and reasonable compensation but, instead, an award tarnished by biased, mistaken, corrupt, and prejudiced deliberations. **See id.**

The following principles govern our review of an order disposing of a request for remittitur.

> We review the trial court's decision to deny Appellant's request for remittitur for an abuse of discretion or error of law. Remittitur is justified only in limited instances such as [] where the verdict plainly is excessive, exorbitant, and beyond what the evidence warrants or where the verdict resulted from partiality, prejudice, mistake, or corruption.
>
> On appeal, we review whether the jury verdict so shocks the sense of justice such that the trial court should have granted remittitur as a matter of law. We cannot merely substitute our judgment for that of the fact-finder and we must review the record "in light of the evidence accepted by the jury. Our Supreme Court reiterated these principles as follows: In reviewing the award of damages, the appellate courts should give deference to the decisions of the trier of fact who is usually in a superior position to appraise and weigh the evidence.
>
> ***

The focus of our review is as follows:

> In determining whether a jury's award of damages is supported by the evidence, the following factors are taken into account:
>
> 1.) the severity of the injury;
>
> 2.) whether the injury is demonstrated by objective physical evidence or subjective evidence;
>
> 3.) whether the injury is permanent;
>
> 4.) the plaintiff's ability to continue employment;
>
> 5.) disparity between the amount of out of pocket expenses and the amount of the verdict; and
>
> 6.) damages plaintiff requested in his complaint.

*Smalls v. Pittsburgh-Corning Corp.*, 843 A.2d 410-415 (Pa. Super. 2004) (internal citations and quotations omitted), *appeal denied*, 857 A.2d 680 (Pa. 2004).

The trial court carefully reviewed the evidence introduced at trial and gave close attention to whether the jury's verdict bore a reasonable relationship to that evidence. The court's Pa.R.A.P. 1925(a) opinion offered the following reasons for denying Keystone's request for remittitur.

> In this case, the jury verdict was reasonable and proper where [Rodriguez] testified that she had severe pain and suffering and debilitating injuries. Her medical expert, Mark Allan, M.D., testified that she had suffered a large herniated and protruding [] disc at L5-S1 that was impinging on her S1 nerve, a bulging disc at L4-5 and a strain [] of her lower back, [and] that her injuries were permanent and she was "a ticking time bomb." He directly related these injuries to the incident in question. Given these injuries, [Rodriguez] will be subject to ongoing participation in a therapy program, the possibility of steroidal injections and even lumbar disc surgery due to the extruded and

- 12 -

large disc herniation at L5-S1 which causes nerve compression directly on the S-1 nerve root.

[Keystone] presented the videotape deposition of its medical expert, Dr. Christian Fras, who testified in a manner diametrically opposed to Dr. Allan. It was solely within the jury's purview to credit which expert was more credible and [the trial court] will not and cannot substitute its judgment for that of the jury.

During its charge, [the trial court] properly instructed the jury that [Rodriguez] had a 52.2 year life expectancy from the time of trial. In light of the testimony regarding the permanency of her injuries, it is apparent that the jury weighed this testimony and calculated a lifetime of pain and suffering in its non-compensatory damages award. Twelve (12) months per year times 52.2 years equates to approximately 626 months. In light of a $600,000.00 verdict for non-compensatory damages, it amounts to [$958.47] per month. Although the award may initially seem excessive on its face, in light of this breakdown, it does not in any way shock the conscious of [the trial court] to a point where it would be deemed excessive [and] warranting a new trial, nor does it require [the trial court] to cast doubt upon the jury's conclusions which would warrant [the award to be downwardly adjusted].

Trial Court Opinion, 5/18/20, at 13-14.

We agree with the trial court that, in view of the evidence introduced at trial - particularly Dr. Allan's testimony characterizing Appellant's injuries as permanent and severe, the jury's award was neither plainly excessive nor the product of biased, mistaken, or corrupt deliberations. Hence, the trial court did not abuse its discretion in denying Keystone's request for remittitur.

In its original third claim, Keystone argued that it was entitled to a new trial because the jury's verdict was inconsistent. In developing this

claim, Keystone notes initially that Rodriguez requested $20,000.00, but received only $10,000.00, for lost wages due to injuries she sustained in the accident. Based upon this difference, Keystone infers that the jury rejected the credibility of Rodriguez's lost wage claim and believed she could have returned to work sooner than she did. Citing an alleged incongruence between the jury's supposed rejection of Rodriguez's lost wages claim, and its $600,000.00 pain and suffering award, Keystone insists that the verdict in this case was inconsistent and that it is entitled to a new trial.

Like the trial court, we read Keystone's claim to be a challenge alleging that the jury's verdict was contrary to the weight of the evidence introduced at trial. Our standard of review for a weight claim is well established.

> [A]ppellate review of a weight claim is a review of the [trial court's] exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence. Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.

***Phillips v. Lock***, 86 A.3d 906, 919-920 (Pa. Super. 2014).

Keystone's claim does not merit relief. Preliminarily, Keystone does not cite pertinent authority or the certified record in support of its position; instead, Keystone identifies a debatable inference and uses it as a platform to suggest infirmities in the jury's verdict. Essentially, Keystone asks us to

J-A01035-21

re-weigh the evidence and adopt an interpretation of the facts consistent with its view of what the trial testimony showed. This is inconsistent with our function in reviewing the merits of a weight claim. Accordingly, based on our review of the record and our assessment of the trial court's determination that the verdict was not contrary to the evidence introduced at trial, we conclude that the trial court did not abuse its discretion or commit an error of law when it found that Keystone was not entitled to a new trial.

Judgment affirmed.

Judge Strassburger did not participate in the consideration or decision of this case.

*Judgment Entered.*

*Joseph D. Seletyn, Esq.*

*Prothonotary*

*Date: 6/15/2023*

- 15 -