FORADORA, J.,
Introduction
Claiming that each is legally insufficient, American Honda Motor Co. (“Honda”) challenges the three causes of action alleged against it by Michael J. McConville and Helen J. McConville (“McConvilles”), who claim that Honda violated Pennsylvania’s Automobile Lemon Law, 73P.S. §§ 1951 et seq., the federal Magnuson-Moss Warranty — Federal Trade Commission Improvement Act, 15 U.S.C.S. 2301 et seq., and Pennsylvania’s Unfair Trade Practices and Consumer Protection Law, 73 P.S. § 201-1 et seq. by failing to correct “numerous defects and nonconformities ... including but not limited to impaired visibility at night due to headlights and/or windshield.” Honda further contends that the McConvilles’ factual allegations do not satisfy Rule 1019(a) of the Pennsylvania Rules of Civil Procedure and must be more specific.
The Complaint
In their complaint, the McConvilles identify a total of five visits they made to authorized warranty repair facilities on account of restricted visibility after dark. Claiming that none resulted in a satisfactory resolution of the problem, however, they now claim that Honda is in violation of the above-referenced statutes.
*206 The plaintiffs first went to Murrays Honda in DuBois, PA on September 5,2014, at which time the odometer read 2,711. Compl., ¶ 9. There the service technician recorded the following complaint: “Customer states that when driving after it gets dark out, the windshield from the top to about the middle starts to get black and can not [sic] be seen threw [sic]??” Id., Exh. 3. He attempted to remedy the problem by adjusting the lights up slightly but noted that the Accord had projector headlights with a sharp top edge on the beam that was normal for the vehicle. Id. He further observed that many people were not used to the projector headlights. Id.
Dissatisfied with the result, the McConvilles presented their vehicle to the Honda Store in Youngstown, Ohio five days later, id. at ¶ 10, where Mr. McConville explained that nearly three-fourths of the windshield went black when he was driving at night — a condition that was more pronounced as he drove up and down the hills in his gated community. Id., Exh. 4. The McConvilles allege, however, that they did not receive an invoice after that visit. See id.
The third visit was to a facility in Coeur D’Alene, Idaho, where the service technician recorded the plaintiffs’ request that he adjust the headlights to their original level. Id. at ¶ 11, Exh. 5. That adjustment still did not address their concerns, however, leading them to seek assistance from Delaney Honda in Indiana, Pennsylvania on February 12, 2015. Id. at ¶ 12, Exh. 7. Mr. McConville again asked that the headlights’ trajectory be inspected because the light was too low. Id. The mechanic observed that they were aimed “at near correct level” and thus adjusted them upward only slightly. Id. Echoing his colleague from Murrays Honda, moreover, he explained that the Accord was equipped with projector style lenses with a *207 characteristically sharp cut off. Id. He then suggested a couple of different upgrades for improved lighting. Id.
After eight more days, Mr. McConville returned to Murrays Honda with the same complaint. Id. at ¶ 13 Exh. 6. The service technician again adjusted the Accord’s headlights and recorded the following description of his work and his interactions with Mr. McConville:
Checked headlight aim, at 25 feet away. Headlight beam should be just below the height of a normal passenger car mirror. Set the headlight beam to 34” at 25 feet away. Before adjustment, beam was (very) slightly low. Check front windshield for distortion, nothing found at this time [sic]. Visually inspected windshield under different lighting conditions, nothing found [sic]. Asked customer and suggested customer drive similar or like model. Customer stated he has not driven similar model.
Id. By then the vehicle had accrued 15,401 miles. Id.
Having thus identified their vehicle’s deficiencies and relevant service history, the McConvilles concluded their general allegations with the following averment: “The nonconformities have not been repaired, resulting in a substantial impairment of the vehicle’s use, safety and value.” Id. at ¶ 14.
Relating those allegations to the Lemon Law, the McConvilles alleged in Count I that the aforementioned defects and conditions constituted “nonconformities” for purposes of the statute and that Honda had failed to repair and/or correct them after three attempts. Id. at ¶ 15-25. They also claimed that the defendant, through its authorized warranty repair facilities, failed to provide invoices for all its repair attempts or to adequately *208 document the plaintiffs’ complaints. Id. at ¶ 26. They then demanded damages totaling the amount of the Accord, plus all collateral charges, alleging that they had “suffered damages as the use, safety and value of [their] vehicle ha[d] been substantially impaired.” Id. at ¶ 28.
Next invoking the Magnuson-Moss Act, the McConvilles averred in Count II that Honda had agreed to perform effective repairs to their vehicle at no charge; that their repair attempts had been ineffective; that the Accord did not comply with either Honda’s express warranties or the non-waivable implied warranty of merchantability; and that they had suffered damages as a result. Id. at ¶¶ 29-36.
In their third and final cause of action, the McConvilles pled that Honda violated Pennsylvania’s UTPCPL by, inter alia, “representing that repairs would be performed for defects in material and workmanship, failing to provide a merchantable vehicle, failing to comply with the terms of [the] warranty, failing to remedy the defects with the vehicle at no charge and failing to provide documentation of repair attempts.” Id. at 42-48. They further contended that its failure to provide documentation of its repair attempts ran afoul of 37 Pa. Code § 301.2 — a regulation promulgated by the Attorney General pursuant to its authority under the UTPCPL. Id. at ¶¶ 49-52. Further alleging their justifiable reliance upon representations made by Honda and its authorized sales facilities, the plaintiffs reiterated their claim of damages, adding that they were entitled to treble damages and attorneys’ fees pursuant to the statute. Id. at ¶¶53-56.
Discussion
A demurrer admits as true all of the challenged *209 pleading’s well-pleaded material facts, as well as their reasonable inferences. Smith v. Wagner, 588 A.2d 1308, 1310 (Pa. Super. 1991). The reviewing court should only sustain a demurrer if the pleading demonstrates on its face that no recovery is possible upon the facts alleged. Id. Thus, only where the law says with certainty that no recovery is possible upon the facts alleged may the court grant a demurrer, and if any doubt exists regarding a cause of action’s sustainability, the decision should be to overrule the demurrer. Toney v. Chester County Hosp., 961 A.2d 192, 197 (Pa. Super. 2008). See also Junge v. Garlock, Inc., 629 A.2d 1027, 1028 n.l (Pa. Super. 1993) (saying that a court considering a demurrer must review the record in the light most favorable to the nonmoving party).
Amotion for a more specific pleading requires a different inquiry: Whether the factual averments are specific enough to adequately explain the nature of the asserted claims and allow the opposing party to frame a proper answer and prepare a defense. Martin v. Lancaster Battery Co., 606 A.2d 444, 448 (Pa. 1992); Banfield v. Cortes, 922 A.2d 36, 50 (Pa. Commw. Ct. 2007). If the averments apprise the other party of the asserted claims, summarize the facts essential to support them, and convince the court that the claims are not merely subterfuge, the pleading will be deemed sufficient as a matter of law. See Martin, supra; Krajsa v. Keypunch, Inc., 622 A.2d 355, 357 (Pa. Super. 1993).
Lemon Law:
A “nonconformity,” for purposes of this litigation, is “[a] defect or condition which substantially impairs the use, value or safety of a new motor vehicle and does not conform to the manufacturer’s express warranty.” 73 P.S. *210 § 1952. In the event that a nonconformity occurs within one year after delivery of the vehicle, within the first 12,000 miles of use, or during the term of the warranty, it is incumbent upon the manufacturer to repair or correct it. § 1954. Honda contends that the McConvilles’ alleged headlight condition is not a nonconformity within the statutory definition, however. Relying on the service technicians’ observations, it instead characterizes the problem as a design issue not covered by its express warranties and, therefore, not within the Lemon Law’s ambit. It further asserts that the McConvilles’ ability to drive the Accord at least 15,401 miles from the date they purchased it obviates their claim that the alleged defect substantially impairs its use, value, or safety.
Reading the complaint as a whole and in the light most favorable to the McConvilles, the court disagrees with Honda’s position.
The McConvilles allege that their impaired night visibility is due to the vehicle’s headlights and/ or windshield, and the service receipts do not prove otherwise. More specifically, two service technicians’ shared opinion does not establish as an irrefutable fact that the McConvilles’ complaint is attributable to the vehicle’s headlight design. Nor does one mechanic’s failure to observe any defects in the windshield prove that the windshield is non-problematic. At this stage of the litigation, moreover, the McConvilles need not even plead evidence in support of their claims. See Maleski v. DP Realty Trust, 653 A.2d 54, 65 (Pa. Commw. Ct. 1994) (“[A] plaintiff is not required to plead evidence in his or her complaint, and therefore, need not allege all of the factual details underlying [a claim]”). Consequently, that they did not produce evidence to refute the technicians’ *211 observations is of no moment. The purpose of preliminary objections is to test the sufficiency of the pleadings, not to test the evidence.
That the McConvilles have accumulated more than 15,000 miles on their Accord is also inconclusive, as there is nothing in the complaint to suggest the conditions under which those miles were driven. The principal concern here is reduced visibility at night, and when the court considers the allegations in the light most favorable to the McConvilles, it can reasonably infer that they drove the Accord primarily during daylight hours — a possibility that would eliminate the obvious safety hazard of driving while looking through a largely obscured windshield.
Honda further cannot undermine the McConvilles’ Lemon Law claim by proposing a single definition of “repair” and asserting that multiple headlight adjustments does not evidence a condition that required repair. Not only does the argument assume an unproven fact, i.e., that the headlight design caused the problem, but it ignores the statutory imperative to repair “or correct” a nonconformity. § 1954(a). According to the McConvilles, though, the issue causing their compromised nighttime visibility remains uncorrected despite Honda’s guarantee to “repair or replace any part that is defective in material or workmanship.” Compl., Exh. 2.
With respect to the allegations pertaining to §§ 1952-56, therefore, the court deems the complaint to be legally sufficient. Furthermore, insofar as it clearly apprises Honda that the plaintiffs are suing because they have experienced reduced visibility at night due to the headlights and/or the windshield, the court is confident that the defendant can frame a proper answer and prepare a defense.
*212 The allegations are also sufficiently specific to sustain the McConvilles’ claim for damages. The cause of action is statutorily defined in this case and does not require injury beyond a manufacturer’s or dealer’s failure to comply with the statutory requirements. Having satisfied that requirement, the McConvilles have also satisfied their duty to sufficiently plead damages.
The McConvilles’ exhibits clearly disprove their claim pursuant to § 1957, however. They contend that Honda, through its authorized warranty repair facilities, “failed to provide invoices for all the repairs [sic] attempts and/ or failed to document all the complaints for the repair attempts.” Compl., ¶ 26. Section 1957 does not require a manufacturer or dealer to document all of a customer’s complaints, though; it only demands that it provide an itemized statement of its work — an obligation with which both the DuBois and Indiana facilities — the only Pennsylvania facilities to which the McConvilles delivered their vehicle — clearly complied. See Exhibits 3, 6, and 7.
Magnuson-Moss Act:
Applying the above analysis, the court concludes that the McConvilles have also sufficiently pled a cause of action under the Magnuson-Moss Act,
According to the federal legislature, “a consumer who is damaged by the failure of a supplier, warrantor, or service contractor to comply with any obligation under this title, or under a written warranty, implied warranty, or service contract, may bring suit for damages and other legal and equitable relief.” 15 U.S.C. §2310(d)(1). If the McConvilles are able to prove that Honda violated its express warranty by failing to repair or replace a part defective in material or workmanship, therefore, they *213 will likewise be able to prove that Honda violated the Magnuson-Moss Act. Additionally, a finder of fact could reasonably conclude that Honda sold the McConvilles a vehicle not fit for ordinary travel when it sold them a car whose windshield they could not properly see through after dark. See 13 Pa.C.S. § 2314(b)(3) (“Goods to be merchantable must be at least such as: are fit for the ordinary purposes for which such goods are used”).
UTPCPL:
Because a violation of the Lemon Law, without more, constitutes a violation of the UTPCPL, 73 P.S. § 1961, the court’s disposition of Honda’s objection to Count I means that Count III also stands as a viable cause of action.
The McConvilles have adequately set forth an independent UTPCPL claim, as well. Honda says they did not set forth any factual allegations to support their claim that it violated five separate subsections of § 201-2(4). In fact, though, the next paragraph directs it to the following actions: “representing that repairs would be performed for defects in material and workmanship, failing to provide a merchantable vehicle, failing to comply with the terms of [the] warrant, failing to remedy the defects with the vehicle at no charge and failing to provide documentation of repair attempts.” Compl., ¶ 48. As further clarified by the McConvilles’ allegations regarding the low visibility condition they experience while driving their Accord at night and their belief that it is attributable to the headlights and/or windshield, that paragraph sufficiently identifies the factual basis of their UTPCPL claim.
The McConvilles have further pled facts sufficient to establish a prima facie agency relationship between Honda and its dealership service centers. 38 Pa. Code § *214 301.1 does indeed define “repair shop” such that Honda does not fit within the latter category. There is nothing about § 301.1 or its accompanying provisions that tends to suggest an intent to divorce this area of law from the long-standing principles of agency, however.
With the exception of paragraphs 26-27 in Count I, therefore, the complaint in this case sufficiently sets forth causes of action under the referenced statutes and does so in a manner that will allow the defendant to appropriately respond and prepare its defense.
ORDER
And now, this 7th day of May 2015, in accordance with the foregoing opinion, it is hereby ordered and decreed that the defendant’s preliminary objections are sustained with respect to paragraphs 26 & 27, which are hereby stricken, and are otherwise overruled.
The defendant shall have twenty (20) days to file an answer.